UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

NICOLE CORRADO,

                    Plaintiff,

                                              ORDER

          - against -
                                              CV 2012-1748 (DLI)(MDG)

NEW YORK STATE UNIFIED COURT SYSTEM,

                    Defendant.

- - - - - - - - - - - - - - - - - X


     Plaintiff brought this action under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq. asserting claims of

sexual harassment and retaliation against the New York State

Unified Court System (the "UCS").  Plaintiff moves to amend the

complaint to add eight individual defendants and the Departmental

Disciplinary Committee of the New York State Supreme Court

Appellate Division, First Department (the "DDC").[1]  In addition,

_____

     [1] As a preliminary matter, I note that I have the authority
to decide plaintiff's motion to amend pursuant to 28 U.S.C.
§ 636(b)(1)(A).  See Fielding v. Tollaksen, 510 F.3d 175, 178 (2d
Cir. 2007) ("a district judge may refer nondispositive motions,
such as a motion to amend the complaint, to a magistrate judge
for decision without the parties' consent"); Kilcullen v. New
York State Dept. of Transp., 55 Fed. App'x 583, 584 (2d Cir.
2003) (referring to motion to amend as a non-dispositive matter
that may be referred to a magistrate judge for decision pursuant
to 28 U.S.C. § 636(b)(1)(A)); Marsh v. Sheriff of Cayuga County,
36 Fed. App'x 10 (2d Cir. 2002) (holding "that the magistrate
judge acted within his authority in denying this motion to amend
the complaint").  Thus, Fed. R. Civ. P. 72(a) governs any
objections to this order.

plaintiff seeks to add new claims brought under 42 U.S.C. §§ 1981 and 1983, the New York State Human Rights Law (the "NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the Family Medical Leave Act (the "FMLA") and state tort law.

## FACTUAL BACKGROUND

Plaintiff commenced this action on April 10, 2012 asserting claims against the New York State Unified Court System for sexual harassment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq. ("Title VII").  Specifically, plaintiff alleged in her complaint that while working as an attorney for the New York State Supreme Court Appellate Division, First Department, Departmental Disciplinary Committee, she was subjected to sexual harassment from 2003 to 2009 by two male supervisors, Andral Bratton and Vincent Raniere. Plaintiff further alleges that she was subject to retaliation for complaining about the harassment and for testifying in a co-worker's race discrimination suit against UCS.

At an initial conference held on October 11, 2012, this Court issued a scheduling order which required, inter alia, that plaintiff file any motion for leave to amend and/or join other parties by November 13, 2012, and that, prior to doing so, plaintiff provide defendant with a copy of a proposed amended complaint.  After plaintiff changed counsel, this Court issued a new scheduling order extending the time to file a motion to amend

to May 1, 2013 and further extended the time for such a motion to July 13, 2013.  Although plaintiff did not file a motion to amend by this deadline, this Court further extended the time for plaintiff to file a motion to October 25, 2013 in light of her one page letter filed on August 15, 2013 (ct. doc. 52), improperly denominated as a motion to amend, in which she advised that she had been terminated from employment.  She subsequently filed a proposed amended complaint on October 26, 2014, which she again improperly denominated as a motion to amend and did not accompany with a memorandum or other document with legal discussion.  Ct. doc. 59.  When defendant objected to plaintiff's attempt to rely on the proposed pleading as constituting a motion to amend (ct. doc. 62), plaintiff filed a reply containing some legal argument and attaching a further revised proposed amended complaint ("Prop. Am. Compl.") on November 14, 2013.  Ct. doc. 63.  This Court then gave defendant an opportunity to respond.

In this second proposed amended complaint, plaintiff alleges at great length and detail the events alleged in the original complaint and includes allegations concerning events occurring since commencement of this action.  The following is a summary of the allegations contained in plaintiff's 60 page revised proposed amended complaint, which are assumed to be true for purposes of the instant motion.

Plaintiff alleges that after Bratton became plaintiff's immediate supervisor in 2003, he was infatuated with her and

subjected her to sexual harassment, including making unwelcome, sexually laden comments at work, and staring at her. Prop. Am. Compl. at ¶¶ 21(d-j). He also routinely called her at night at her home. Id. at ¶ 21(k). After plaintiff requested in June 2007 a transfer to another supervisor, Bratton took a medical leave for a few months but then persisted in pursuing plaintiff upon his return to work. Id. at ¶ 21(m-o).

Plaintiff alleges that Raniere, who, at the time, was Chief Investigator at the DDC, also subjected plaintiff to sexual harassment between 2004 and 2008. Id. at ¶ 21(v-w). Besides making unwanted, sexually laden comments to plaintiff, Raniere kissed and inappropriately touched plaintiff. Id. at ¶ 21(x-bb).

In June 2008, after plaintiff provided corroborating testimony in an unrelated race discrimination suit against the UCS, Alan Friedberg, then Chief Counsel to the Appellate Division, First Judicial Department, Departmental Disciplinary Committee, began closely monitoring plaintiff and adding memos to plaintiff's personnel file reflecting negative evaluations of plaintiff's work. Id. at ¶ 21(q). Prior to 2008, plaintiff had received positive annual performance reviews. Id. at ¶ 21(eeee).

In September 2008, plaintiff lodged a complaint with Alan Friedberg regarding Bratton's and Raniere's conduct. Id. at ¶ 21(t). Friedberg subsequently referred plaintiff's complaints regarding Bratton, but not against Raniere, for investigation by the Inspector General's Office for the Unified Court System. Id.

-4-

at ¶ 21(dd), (vv).  During the investigation, Bratton admitted to making inappropriate comments and to his infatuation with plaintiff.  Id. at ¶ 21(ee).  Despite Bratton's admission, the UCS, DDC, Judge Gonzalez, Mr. Reardon and court administrators determined that Bratton engaged only in inappropriate conduct, but not sexual harassment, and would be transferred to another unit.  Id. at ¶ 21(ii).  However, plaintiff continued to have contact with Bratton when he appeared at the DDC intermittently and at a meeting in November 2008 that plaintiff was required to attend.  Id. at 21(jj-kk).  After the investigation concluded in November, plaintiff alleges that Friedberg retaliated against her by intensifying his monitoring of plaintiff, routinely ridiculing and reprimanding plaintiff, criticizing her work and demanding that she attend counseling sessions or face termination.  Id. at ¶ 21(gg), (hh), (nn).

From January 2009 through July 2009, plaintiff was assigned unreasonable work loads and received negative performance evaluations.  Id. at ¶ 21(ss), (tt).  As a result of continued contact with Bratton and Raniere and scrutiny by Friedberg, plaintiff felt threatened.

In January 2009, plaintiff's home was "virtually destroyed" by a flood caused by a broken pipe and the following month, one of plaintiff's other properties burned down.  Id. at ¶ 21(ll).  Plaintiff reported these events to Friedberg and her view they were "highly suspicious," but Friedberg was indifferent.  Id. at

¶ 21(mm).

In May 2009, plaintiff filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission alleging that she was subjected to a hostile work environment, sexually harassed and retaliated against.  Id. at ¶ 21(pp).

In July 2009, Mr. Friedberg further increased his close monitoring of plaintiff at work.  Id. at ¶ 21(ss).  Plaintiff, who was becoming "increasingly anxious," sought to take a leave of absence or transfer to another division of UCS but her requests were denied.  Id. at ¶ 21(uu).  She was directed on July 16, 2009 by Friedberg, Gonzalez, McConnell and Reardon to attend counseling sessions under threat of termination if she did not attend.  Id. at ¶ 21(ss), (ww).

In or around July or August 2009, the Inspector General's office commenced an investigation into plaintiff's complaints regarding Raniere's conduct.  Id. at ¶ 21(vv).  In August 2009, plaintiff was informed that the Inspector General's investigation into her complaint regarding Raniere resulted in a finding that her allegations were unfounded.  Id. at 21(yy).

Also in August 2009, the DDC commenced an investigation into an attorney plaintiff had retained to represent her in an unrelated civil case.  Id. at ¶ 21(fff).  In May 2010, plaintiff's counsel in the unrelated case abruptly withdrew.  Id. at ¶ 21(ggg).  That same month, the ethical charges against

plaintiff's counsel were dismissed as unfounded.  <u>Id.</u> at
¶ 21(hhh).  In January 2012, plaintiff discovered the
investigation files regarding her former counsel.  <u>Id.</u> at
¶ 21(mmm).

Plaintiff took an unpaid leave of absence from her position
from August 2009 to August 2011.  <u>Id.</u> at ¶ 21(zz), (aaa).  Upon
her return to work, plaintiff was subjected to rigorous scrutiny
of her work and her attendance was strictly monitored.  <u>Id.</u> at
¶ 21(ddd).  In addition, within her first month back at work, two
of plaintiff's office desk chairs collapsed under her.  <u>Id.</u> at
¶ 21(ddd).  On at least two occasions at the office, she suddenly
began to experience severe irritation, swelling and blurry vision
in her eyes.  <u>Id.</u>

In 2012, plaintiff was criticized for her handling of a
disciplinary hearing, including that she had missed important
documents in the file.  <u>Id.</u> at ¶ 21(www).  Plaintiff contends
that those documents were not in the file when she prepared for
the hearing.  <u>Id.</u>

After plaintiff filed the instant lawsuit on April 10, 2012,
she renewed her request for a transfer from the DDC, which was
denied.  <u>Id.</u> at ¶ 21(sss).  She alleges that she was also then
subjected to increased hostility from DDC management and staff,
strict monitoring and excessive work assignments.  <u>Id.</u> at
¶ 21(ttt).

From on or about March 4, 2013 through March 25, 2013,

plaintiff took an approved FMLA leave of absence to care for her daughter. Id. at ¶ 21(xxx), (zzz). Upon her return from FMLA leave, on or about March 25, 2013, plaintiff was given a negative evaluation. Id. at ¶ 21(zzz). Plaintiff again renewed her request for a transfer, which was ignored and/or denied. Id. at ¶ 21(ffff). Plaintiff resigned her position on August 7, 2013 after being ordered to attend counseling sessions under threat of termination for insubordination. Id. at ¶¶ 21(ffff), (iiii), (oooo), (qqqq).

Plaintiff seeks to add as defendants: Justice Luis Gonzalez, Presiding Justice of the Appellate Division, First Department; John McConnell, former Clerk of the Court, Appellate Division, First Department; Roy Reardon, Chairman of the Policy Committee for the DDC; Jorge Dopico, current Chief Counsel of the DDC; Angela Christmas, Deputy Counsel of the DDC; Allen Friedberg, Vincent Raniere and Naomi Goldstein, Deputy Counsel of the DDC.


DISCUSSION

I.   Rule 8 Pleading Requirements

This Court first addresses defendants' argument regarding the deficiencies in how plaintiff drafted the proposed amended complaint. Rule 8 of the Federal Rules of Civil Procedure requires that a complaint set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In Salahuddin v. Cuomo, the Second

Circuit stated that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power . . . to strike any portions that are redundant or immaterial, see Fed. R. Civ. P. 12(f), or to dismiss the complaint." 861 F.2d 40, 42 (2d Cir. 1988). This is "because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." Id. Since this issue generally arises in the context of pro se plaintiffs, see, e.g., Jones v. Nat'l Comm'cs & Surveillance Networks, 266 Fed. App'x 31 (2d Cir. 2008); Salahuddin, 861 F.2d 40, it is notable that the proposed amended complaint was drafted by an attorney on behalf of an attorney.

Defendant contends that the allegations contained in the proposed amended complaint are presented "in a manner so vague, ambiguous and confused that it would make unacceptably difficult defendants' . . . preparation of a responsive pleading." Ct. doc. 69 at 4. While I do not find that the proposed amended complaint is "unintelligible" or "a labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension," see Shomo v. State of New York, 374 Fed. App'x 180, 183 (2d Cir. 2010), the pleading is indeed unnecessarily prolix, labyrinthian and redundant. For example, paragraph 21 of the proposed amended complaint consists of 92 lettered subparagraphs running from subparagraph (a) to (nnnn). Many of those subparagraphs are unnecessarily verbose containing multiple allegations. See,

-9-

e.g., Proposed Am. Compl. at ¶ 21(k), (aa), (kk), (uuu), (www), (zzz).

Subparagraph 21(kk) is a notable example of plaintiff's failure to comply with Rule 8(a)(2); it consists of a rambling 14 sentence narrative describing a host of matters covering plaintiff's anxiety and fear from August 2008 to August 2009 arising from defendants' conduct, plaintiff's attendance at a seminar in November 2008 which she was required to attend even though Bratton would also be present, a discussion she had with defendant Roy Reardon at the seminar, and her experience visiting the Federal Bureau of Investigation ("FBI") following the seminar. Suffice to say, by including unnecessary, excessive detail, plaintiff failed miserably in providing a "short and plain statement" of her claims, as required by Rule 8(a)(2). Rather, plaintiff indulged in unnecessary minutiae in recounting events, such as detailing conversations she had with Friedberg and Mr. Reardon.

In addition, many allegations concerned occurrences that are not central to her claims. Plaintiff's terse conversation with Mr. Reardon and her making a complaint to an FBI Agent who expressed inability to take action about her treatment at work have little, if anything, to do with "plaintiff's entitlement to relief" against the defendants. Given the convoluted organization of her pleading which was not chronological, plaintiff also repeated allegations, such as the allegation about her fear and anxiety in subparagraph (kk) which appears elsewhere

-10-

in the proposed amended complaint, including in subparagraphs
(mm), (oo) and (uu) of paragraph 21, thereby unnecessarily
increasing the length of this pleading.  <u>See, e.g.</u> Proposed Am.
Compl. at ¶¶ 21(ss), (ww).

In addition, each cause of action listed in the complaint
consists of allegations of the violation of multiple statutes.
To confuse things further, plaintiff does not correlate specific
factual allegations to each of the various "causes of action" or
violations of a particular statute.  Instead, she perfunctorily
"repeats and realleges each allegation in each numbered paragraph
above."  As such, the reader cannot distinguish which factual
allegations correspond to the violation of which statute,
particularly since there is a considerable overlap between the
various factual allegations and the statutory violations to which
they could relate.  Thus, it is not clear how the many
overlapping claims vary and what facts each overlapping claim is
dependent on.  <u>See</u> <u>Hadley v. Radioshack Corp.</u>, 2002 WL 1159871,
at * 2 (S.D. Fla. 2002) ("'shotgun pleading' . . . makes it
difficult if not impossible, to discern what claims plaintiff is
attempting to state").  Once plaintiff specifies which factual
allegations correspond to which claim, it will be easier to
determine whether any of the claims that remain are duplicative.

Related to this issue is the fact that plaintiff appears to
have asserted claims to maximize the number of claims, with
citation to different federal and state statutes as to each cause
of action.   While the federal statutes may involve different

material elements arising from the same facts, the state and local laws that plaintiff reflexively cites with each federal claim -- whether under Title VII, Section 1983 and Section 1981 – may not. Even though there may be a need to plead federal claims separately, plaintiff's reflexive referral to state and local statutes with each federal claim may result in duplicative claims under the NYSHRL and NYCHRL as to each "cause of action" asserted. For example, the state and local statutory claims in claims One, Two, Six and Seven would appear to be duplicative. Compare Proposed Am. Compl. at ¶¶ 27, 29, 37, 39. Plaintiff should consider separating the state and local statutory claims from the federal statutory claims and consolidate the state and local statutory claims to avoid redundancy.

While these problems may not rise to the level that would warrant dismissal of the complaint, the repetition of allegations and the organization of the proposed pleading would unnecessarily burden the defendant in attempting to respond. Since plaintiff will have to conform her amended complaint in accordance with the rulings set forth below, plaintiff must submit an amended complaint which "omits unnecessary detail," Loeber v. Spargo, 144 Fed. App'x 168, 170 (2d Cir. 2005), and reflects consideration of the Court's other comments in re-drafting. In doing so, plaintiff is reminded of Rule 8's requirement that "[e]ach allegation must be simple, concise and direct." Fed. R. Civ. P. 8(d)(1). Further, Rule 10 provides that "[a] party must state its claims and defenses in numbered paragraphs, each limited as

far as practicable to a single set of circumstances." Fed. R.
Civ. P. 10(b).

II.  <u>Motion to Amend</u>

Rule 15(a) of the Federal Rules of Civil Procedure provides
that the Court should freely grant leave to amend a pleading when
justice so requires.  <u>See</u> <u>Zenith Radio Corp. v. Hazeltine</u>
<u>Research, Inc.</u>, 401 U.S. 321 (1971); <u>Andersen News, LLC v.</u>
<u>American Media, Inc.</u>, 680 F.3d 162, 185 (2d Cir. 2012).  Thus,
courts should ordinarily grant leave to amend in the absence of
bad faith by the moving party, undue prejudice or futility.
<u>Friedl v. City of New York</u>, 210 F.3d 79, 87 (2d Cir. 2000);
<u>Manson v. Stacescu</u>, 11 F.3d 1127, 1133 (2d Cir. 1993) (citing
<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  Delay alone does not
justify denial of leave to amend.  <u>See</u> <u>Ruotolo v. City of N.Y.</u>,
514 F.3d 184, 191 (2d Cir. 2008); <u>Rachman Bag Co. v. Liberty</u>
<u>Mutual Ins. Co.</u>, 46 F.3d 230, 234 (2d Cir. 1995); <u>Richardson</u>
<u>Greenshields Sec., Inc. v. Lau</u>, 825 F.2d 647, 653 n.6 (2d Cir.
1987).  Ultimately, the decision to grant or deny a request to
amend is within the discretion of the district court.  <u>Foman</u>, 371
U.S. at 182; <u>John Hancock Mut. Life Ins. Co. v. Amerford Int'l</u>
<u>Corp.</u>, 22 F.3d 458, 462 (2d Cir. 1994).

Although defendants do not argue that plaintiff's motion
should be denied on grounds of timeliness, it bears noting that
plaintiff ignored the Court ordered deadline to file a motion for

leave to amend by October 25, 2013, instead filing a proposed
amended complaint one day after the deadline passed without any
argument in support.  Following defendants' opposition to the
proposed amended complaint, plaintiff revised her proposed
amended complaint.  Rather than instructing plaintiff to properly
file a motion to amend, the Court deemed plaintiff's reply as the
operative motion to amend as a matter of efficiency.  Since the
Court gave defendants a fresh opportunity to oppose the revised
proposed amended complaint, defendants were not prejudiced by
plaintiff's flouting of this Court's procedures.  However,
plaintiff has exhibited a pattern of both tardy applications and
failure to follow the governing rules which will not be permitted
in the future.

Defendant opposes plaintiff's motion to amend on futility
grounds.  An amendment is futile if the complaint's allegations
would not withstand a Rule 12(b)(6) motion to dismiss.  See Majad
ex rel. Nokia Retirement Sav. and Inv. Plan v. Nokia, Inc., 528
Fed. App'x 52, 53 (2d Cir. 2013).  On a motion to dismiss, as to
those factual allegations that are well-pled, the court must
determine whether they "plausibly give rise to an entitlement to
relief."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).
Plausibility "is not akin to a probability requirement" but it
requires more than "a sheer possibility that a defendant has
acted unlawfully."  Id. at 678.  "In ruling on a motion pursuant
to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to

assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010) (internal quotation marks and citations omitted). The factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in plaintiff's favor. See Rescuecom Corp. v. Google, 562 F.3d 123, 127 (2d Cir. 2009).

Adding the DDC as a Defendant

Defendant argues that the DDC is not a proper party to this action.

The capacity of an entity to be sued is determined by state law. See Fed. R. Civ. P. 17(b). Plaintiff alleges in the proposed amended complaint that the DDC is an independent committee appointed by the UCS. Indeed, the DDC is part of the Appellate Division and has "no separate judicial, administrative or legislative identity." Rapaport v. Departmental Disciplinary Committee for First Judicial Department, 1989 WL 146264, at *1 (S.D.N.Y. 1989); see N.Y. Comp. Codes R. & Regs., tit. 22, § 603.4(a) ("[t]his court shall appoint a Departmental Disciplinary Committee for the Judicial Department, which shall be charged with the duty and empowered to investigate and prosecute matters involving alleged misconduct by attorneys"). Accordingly, the DDC is not a suable entity.

Although plaintiff alleges that she "worked for [the DDC],"

she also states that the UCS "was and is an 'employer' that 'employs' at least 15 'employees' within the meaning of Title VII." Prop. Am. Compl. at ¶ 11. Plaintiff does not make similar allegations regarding the DDC and merely argues that the DDC is an agency within the UCS where she worked. Based on the allegations in the complaint, it appears that defendant is correct that plaintiff's claims of employment discrimination are more appropriately directed at the UCS rather than the DDC. Ct. doc. 69 at 6. Further, even if the DDC were a suable entity, it is immune from suit under the Eleventh Amendment as an arm of the State. See McKeown v. New York State Commission on Judicial Conduct, 377 Fed. App'x 121 (2d Cir. 2010); Bernstein v. State of New York, 591 F. Supp. 2d 448, 465-66 (S.D.N.Y. 2008). Therefore, plaintiff's motion to add the DDC as a party is denied as futile.

### FMLA Claim

Defendant argues that amendment to add FMLA claims against the individual defendants in the fourth claim would be futile because they are entitled to qualified immunity. Qualified immunity "protects government officials from liability where the officials' conduct was not in violation of a 'clearly established' constitutional right." Sudler v. City of N.Y., 689 F.3d 159, 174 (2d Cir. 2012). "If the conduct did not violate a clearly established constitutional right, or if it was

objectively reasonable for the [official] to believe that his conduct did not violate such a right, then the [official] is protected by qualified immunity." Id. (quoting Doninger v. Niehoff, 642 F.3d 334, 345 (2d Cir. 2011)).

Defendant argues that it was not clearly established in this Circuit that supervisors at public agencies could be held individually liable under the FMLA. However, qualified immunity is intended to provide a defense to those individuals acting in good faith in the exercise of their duties. See Pearson v. Callahan, 555 U.S. 223, 232 (2009) ("[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). Here, defendants cannot claim that it was unclear whether the conduct alleged was unlawful. The proposed individual defendants are not entitled to qualified immunity since the rules governing their conduct were clearly established, even if the rules pertaining to their personal liability for such conduct were not clearly established. See Bonzani v. Shinseki, 2013 WL 5486808, at *14-*15 (E.D. Cal. 2013); Brunson v. Forest Preserve Dist. of Cook Cty., 2010 WL 780331, at *8 (N.D. Ill. 2010); see also Gray v. Baker, 399 F.3d 1241, 1245 (10th Cir. 2005); but see Modica v. Taylor, 465 F.3d 174 (5th Cir. 2006) (finding defendant entitled to qualified immunity); Wanamaker v. Westport Bd. of Educ., 899 F. Supp. 2d

193, 202-04 (D. Conn. 2012) (same).

In addition, defendant argues that the allegations in the proposed amended complaint relating to retaliation under the FMLA fail to describe the proposed defendants' personal involvement.

Personal liability under the FMLA depends on whether the individual qualifies as an "employer" under section 2611(4)(A)(ii)(I). In determining individual liability under the FMLA, district courts in this Circuit have applied the "economic reality" test adapted from the Fair Labor Standards Act context. Under the economic reality test, "the Court must determine 'whether each named individual defendant controlled in whole or in part plaintiff's rights under the FMLA.'" Smith v. Westchester Cty., 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011) (quoting Holt v. Welch Allyn, Inc., 1997 WL 210420, at *2 (N.D.N.Y. 1997)); see Singh v. N.Y. State Dept. of Taxation and Fin., 911 F. Supp. 2d 223, 242 (W.D.N.Y. 2012). To survive a motion to dismiss, plaintiff must "'plead that the proposed individual defendants had substantial control over the aspects of employment alleged to have been violated.'" Smith, 769 F. Supp. 2d at 475 (quoting Augustine v. AXA Fin., Inc., 2008 WL 50250147, at *4 (S.D.N.Y. 2008)).

As defendant recites in its opposition, plaintiff alleges that shortly after she returned from FMLA leave, proposed defendants Christmas and Goldstein gave plaintiff a negative evaluation which was signed by proposed defendant Dopico and was

-18-

written at the direction of proposed defendants Reardon, McConnell and Gonzalez. Plaintiff also alleges that after returning from FMLA leave, she was ordered to attend counseling sessions by Christmas and Dopico "at the direction, mandate and approval" of Reardon, McConnell and Gonzalez. Plaintiff's allegations are sufficient to describe each individual's participation in the alleged retaliation.

Finally, defendant argues that the retaliatory acts alleged are insufficient to give rise to liability. As discussed more fully below, the adverse actions required to sustain a retaliation claim need not affect the "terms and conditions" of plaintiff's employment.

Section 1981 Claim

Defendant correctly argues that plaintiff's fifth claim brought pursuant to section 1981 is futile. Section 1981 claims against an agency of the state, such as the UCS, are barred by the Eleventh Amendment.[2] See Wang v. Office of Professional Medical Conduct, N.Y., 354 F. App'x 459, 460 (2d Cir. 2009); Concey v. N.Y. State Unified Court System, 2011 WL 4549386, at *7

_____

[2] Plaintiff argues that defendant has waived the defenses of sovereign immunity and qualified immunity by failing to raise the defenses in its original answer. However, the only claims plaintiff asserted in her original complaint were brought under Title VII to which the defense of sovereign immunity does not apply. Similarly, qualified immunity is not a defense to a Title VII claim nor is it a defense available to the UCS, the only defendant originally named in the complaint.

(S.D.N.Y. 2011).  Further, as noted above, even if the DDC were a suable entity, it is immune from suit under the Eleventh Amendment as an arm of the State.  See McKeown v. New York State Commission on Judicial Conduct, 377 Fed. App'x 121 (2d Cir. 2010); Bernstein v. State of New York, 591 F. Supp. 2d 448, 465-66 (S.D.N.Y. 2008).

Similarly, the individual defendants enjoy sovereign immunity against section 1981 claims brought against them in their official capacities.  See Bailey v. N.Y. Dep't of Motor Vehicles, 2013 WL 3990770, at *10 n.10 (E.D.N.Y. 2013).  Finally, section 1983 is the exclusive damages remedy for the violation of rights guaranteed by section 1981 when brought against government entities or "state actors" sued in their individual capacities. See Hogan v. County of Lewis, N.Y., 929 F. Supp. 2d 130, 151 (N.D.N.Y. 2013); Buckley v. New York, 959 F. Supp. 2d 282, 298 (E.D.N.Y. 2013); Westbrook v. City Univ. of N.Y., 591 F. Supp. 2d 207, 222-23 (E.D.N.Y. 2008); see also Jett v. Dallas Independent Sch. Dist., 491 U.S. 701, 735 (1989).  Therefore, plaintiff is denied leave to amend to add a section 1981 claim against all the defendants.


Retaliation under Title VII- DDC Investigation into Plaintiff's Attorney in an Unrelated Action

In the ninth cause of action asserted in the proposed amended complaint, plaintiff alleges that defendants' continued

retaliation was "prompted by Plaintiff's January 2012 discovery
of ethics files relative to her civil attorney and his firm,
which caused the loss of her employment." Prop. Am. Compl. at
¶ 43. Defendant argues that this allegation does not state a
Title VII retaliation claim because it "lack[s] any nexus with
Title VII protected activity." However, defendant's reading of
the complaint is unduly narrow. Plaintiff alleges that in 2012
she discovered that the DDC had, unbeknownst to her, conducted an
ethics investigation regarding an attorney she had retained in a
civil matter and concluded that the charges were unfounded. Id.
at ¶ 21 (eee), (fff), (hhh), (mmm). When plaintiff discovered
that an investigation had been conducted, she immediately brought
it to the attention of Jorge Dopico who later informed plaintiff
that there were no findings of DDC impropriety, quid pro quo,
conflict of interest or other issues giving rise to recusal. Id.
at ¶ 21 (nnn), (ppp). Plaintiff further alleges that "from the
time that Plaintiff discovered the circumstances surrounding her
civil attorney's disciplinary investigations, Plaintiff
encountered enhanced hostility from DDC management and staff,"
and was again closely monitored, given excessive work assignments
and treated so as to "discredit Plaintiff's credentials." Id. at
¶ 21(ttt). Defendant is correct that her discovery of the ethics
investigation itself is not a protected activity. However,
implicit in plaintiff's allegations is the charge that the DDC's
investigation into her attorney was commenced in retaliation for

her filing an EEOC charge, a protected activity. <u>Id.</u> at ¶ 21(fff). To the extent plaintiff claims that she was also retaliated against for complaining about retaliation for filing an EEOC charge, I cannot find that such a claim is futile.

<u>Section 1983 Claims for Retaliation</u>

Defendant is also correct that plaintiff cannot bring section 1983 claims against defendant UCS or the proposed individual defendants for retaliation in claims Three,[3] Four, Six, Seven, Eight and Ten. Neither a state nor its employees sued in their official capacities are considered "persons" that can be sued under section 1983 because of the state's Eleventh Amendment immunity. <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989); <u>Posr v. Court Officer Shield No. 207</u>, 180 F.3d 409, 414 (2d Cir. 1999).

Likewise, the retaliation claims against defendants in their individual capacities brought under section 1983 are futile. In order to state a claim under section 1983, plaintiff must allege that defendants deprived her of a right, privilege or immunity guaranteed by the Constitution or the laws of the United States. <u>See</u> 42 U.S.C. § 1983. Plaintiff's section 1983 claims are based on violations of the equal protection and due process clauses. <u>See</u> Proposed Am. Compl. at ¶¶ 31, 33, 37, 39, 41, 45. The

---

[3] Claim Three also includes allegations not pertaining to retaliation and are not addressed in this section.

retaliation claims brought by plaintiff may be cognizable under Title VII, but retaliation for complaints of sexual harassment and gender/sex discrimination is not cognizable as a claim under the due process or equal protection clauses as alleged by plaintiff.[4]  See Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996) ("although claims of retaliation are commonly brought under the First Amendment, and may also be brought under Title VII . . . we know of no court that has recognized a claim under the Equal Protection Clause for retaliation following complaints of racial discrimination"); Rosenberg v. City of New York, 2011 WL 4592803, at *10 (E.D.N.Y. 2011); Worthington v. Cty. of Suffolk, 2007 WL 2115038, at *2 (E.D.N.Y. 2007).

In addition, plaintiff raises the First Amendment as a ground  for a section 1983 claim for retaliation.  See Proposed Am. Compl. at ¶ 37.  The Supreme Court has held that an employee's speech is protected by the First Amendment only if the employee speaks "as a citizen on a matter of public concern."

---

[4] Although the Second Circuit allowed a section 1983 retaliation claim to proceed on an equal protection theory in Hicks v. Baines, 593 F.3d 159, 171 (2d Cir. 2010), the court did not cite to or discuss Bernheim.  Since the Second Circuit has not expressly overruled Bernheim, it appears to still be good law.  Since courts in the Second Circuit are divided on the question whether the Second Circuit overruled Bernheim in Haines, it is clear that "the right to be free from retaliation under the Equal Protection clause is not clearly established, barring (under the doctrine of qualified immunity) the individual-capacity § 1983 retaliation claims."  Siani v. State University of New York at Farmingdale,  --- F. Supp. 2d ----, 2014 WL 1260718 (E.D.N.Y. 2014) (discussing cases).

<u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006).  Complaints of gender discrimination in the workplace are not matters of "public concern" where they relate to a personal employment grievance.  <u>See</u> <u>Saulpaugh v. Monroe Community Hosp.</u>, 4 F.3d 134, 143 (2d Cir. 1993); <u>DeFillippo v. N.Y. State Unified Court Sys.</u>, 2006 WL 842400, at *15 (E.D.N.Y. 2006); <u>see</u> <u>also</u> <u>Sousa v. Roque</u>, 578 F.3d 164, 174 (2d Cir. 2009).  Here, plaintiff filed EEOC charges regarding sexual harassment and retaliation concerning conduct that was directed solely towards her rather than system-wide discrimination.  Therefore, plaintiff's activity in filing an EEOC complaint against the UCS is not protected by the First Amendment and cannot serve as the basis for plaintiff's section 1983 claim.

However, insofar as plaintiff's claim of a First Amendment violation is based on her testimony in a race discrimination lawsuit, such a claim must be analyzed differently.  As the Supreme Court recognized in <u>Lane v. Franks</u>, 134 S.Ct. 2369, 2380 (U.S. 2014), sworn testimony by a public employee at a trial may be speech of public concern.  Although the speech in <u>Lane</u>, which concerned public corruption, is more readily recognizable as speech of public concern, the Supreme Court observed that "'testimony under oath has the formality and gravity necessary to remind the witness that his or her statements will be the basis for official governmental action, action that often affects the rights and liberties of others.'"  <u>Id.</u> (quoting at <u>United States</u>

-24-

<u>v. Alvarez</u>, 132 S.Ct. 2537, 2546 (2012) (plurality opinion)).

Nonetheless, plaintiff's claims for violation of her First Amendment rights in this regard are not viable, since, as the Supreme Court found in <u>Lane</u>, the right to be free from retaliatory action for testifying in a proceeding was not "'clearly established' at the time of the challenged conduct." <u>Id.</u> at 2381-82. Thus, the defendants are entitled to qualified immunity from suit for claims in their personal capacities, <u>id.</u>, and immunity under the Eleventh Amendment for claims in their official capacity, as previously discussed.

<u>NYC Human Rights Law Claims</u>

Defendant correctly argues that certain of plaintiff's proposed claims brought under the New York City Human Rights Law would be futile. The state has not waived its Eleventh Amendment immunity with respect to such claims either against its agencies or employees sued in their official capacities. <u>See</u> <u>Feingold v. New York</u>, 366 F.3d 138, 149 (2d Cir. 2004); <u>Jallow v. Office of Court Administration</u>, 2012 WL 4044894, at *5 (S.D.N.Y. 2012), adopted by 2012 WL 4793871 (S.D.N.Y. 2012); <u>Schwartz v. York College</u>, 2009 WL 3259379, at *3 (E.D.N.Y. 2009). Therefore, any such claims brought against the UCS or the proposed individual defendants in their official capacities would be futile.

NYS Human Rights Law Claims

Defendant argues that plaintiff's proposed New York State Human Rights Law retaliation claims fail to state a cause of action. Specifically, defendant contends that the employment actions plaintiff alleges that she was subjected to were not sufficiently "adverse" to give rise to a claim of retaliation.

The standards for retaliation under the NYSHRL are the same as under Title VII. See Rivera v. Rochester Genesee Regional Transp. Auth., 743 F.3d 11, 25 n.8 (2d Cir. 2014) (quoting Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006)). To show a prima facie case of retaliation, plaintiff must demonstrate that "(1) he was engaged in protected activity, (2) the employer was aware of that activity, (3) the employee suffered a materially adverse action and (4) there was a causal connection between the protected activity and that adverse action." Rivera, 743 F.3d at 24. In Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), the Supreme Court broadened the definition of "material adverse action" for retaliation claims. Unlike disparate treatment claims where adverse action must relate to the terms and conditions of employment, a retaliation plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68.

On the other hand, "those petty slights or minor annoyances that often take place at work and that all employees experience" are not actionable. Id. "'[C]ontext matters,' as some actions may take on more or less significance depending on the context." Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011) (quoting Burlington Northern, 548 U.S. at 69). The significance of workplace conduct "depends on a constellation of surrounding circumstances, expectations, and relationships" such that "an act that would be immaterial in some situations is material in others." Burlington Northern, 548 U.S. at 69. In addition, "alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (quoting Zelnik v. Fashion Institute of Tech., 464 F.3d 217, 227 (2d Cir. 2006)).

Defendant misstates the applicable standard for material adverse action and cites cases that either precede the Supreme Court's decision in Burlington or involve disparate treatment claims, which, as noted above, require that adverse action affect the terms and conditions of employment.[5] As characterized by defendant, plaintiff alleges the following acts of retaliation: 1) she was closely monitored and micro-managed; 2) she was

---

[5] Plaintiff also cites the wrong standard. See ct. doc. 70 at 5.

routinely and viciously ridiculed, reprimanded and criticized for her investigative and litigation work and memos reflecting negative accounts of her productivity and practices were placed in her personnel file; 3) she was subjected to numerous hours of one-on-one supervision; 4) she was subjected to unreasonable workloads, demands and deadlines; 5) she was strictly monitored on her time and leave and memos reflecting her arrival and departure times were placed in her personnel file; 6) she was repeatedly ordered to attend counseling sessions of performance and time and leave issues, under threat of termination if she failed to attend these sessions; 7) she was given a negative performance evaluation; 8) she was denied a request for transfer; and 9) she was constructively discharged. <u>See</u> ct. doc. 69 at 11-12.

At the outset, plaintiff's alleged constructive discharge, standing alone, clearly qualifies as an adverse employment action sufficient to sustain her retaliation claim. <u>See</u> <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 357 (2d Cir. 2001) ("[a]dverse employment actions include discharge from employment . . . [which] may be either an actual termination of the plaintiff's employment by the employer or a 'constructive' discharge"); <u>Sandvik v. Sears Holding/Sears Home Improvement Prods., Inc.</u>, 2014 WL 24225, at *11 (E.D.N.Y. 2014). As to the other allegations in the complaint, although some of the conduct cited may be considered "trivial" when considered in isolation, in the

aggregate, when viewed in the light most favorable to plaintiff, the course of conduct described by plaintiff is sufficient to constitute adverse action.  See Penn v. N.Y. Methodist Hosp., 2013 WL 5477600, at *16 (S.D.N.Y. 2013) ("alleged instances of retaliation, in the aggregate, allow for the inference that Defendants subjected Plaintiff to closer scrutiny because he engaged in protected activity"); Rowe v. N.Y. State Div. of Budget, 2013 WL 6528841, at *3 (N.D.N.Y. 2013) ("course of action in excluding Plaintiff from various meetings, projects and training and in changing Plaintiff's title might nevertheless represent adverse actions supporting her retaliation claim"); Friel v. Cty. of Nassau, 947 F. Supp. 2d 239, 254 (E.D.N.Y. 2013) (audit of plaintiff's computer usage in combination with reduction in assignments supports a plausible inference of retaliation); Kirkweg v. N.Y. City Dep't of Educ., 2013 WL 1651710, at *5 (S.D.N.Y. 2013) (loss of performance bonus, excessive scrutiny and poor performance review qualify as adverse actions); Kretzmon v. Erie Cty., 2013 WL 636545, at *7 (W.D.N.Y. 2013) ("incidents, considered in their totality" constitute adverse actions).  Plaintiff complains of a sustained campaign of retaliation over the course of several years involving increased scrutiny, criticism of her work, negative evaluations and denials of her transfer requests to remove herself from the allegedly toxic environment in which she worked.  I find that, in context, even the minor acts of retaliation recited by plaintiff are

sufficiently "substantial in gross" so that they might dissuade a reasonable worker from engaging in protected activity.

In addition, defendant argues that the NYSHRL claims are futile since they are duplicative of the Title VII claims. Although the standards are "analytically identical," see EEOC v. Mavis Discount Tire, 2013 WL 5434155, at *5 (S.D.N.Y. 2013), defendant has not provided any authority that claims under the NYSHRL cannot proceed simultaneously with Title VII claims.

State Law Tort Claims

Defendant correctly argues that plaintiff's state law tort claims against it and the individual defendants in their official capacities are barred by sovereign immunity. See DeLee v. White, 2011 WL 7415124, at *16 (W.D.N.Y. 2011); Moore v. City of N.Y., 2011 WL 795103, at *7 n.3 (E.D.N.Y. 2011); Reeves v. City of N.Y., 1999 U.S. Dist. LEXIS 21763, at *11 (S.D.N.Y. 1999); see also Sank v. City Univ. of N.Y., 112 Fed. Appx. 761, 763 (2d Cir. 2004). In response, plaintiff contends that the Court may exercise pendent jurisdiction over these state claims. The Court cannot exercise pendent jurisdiction over claims which cannot be brought against the state in federal court. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 120-21 (1984) ("neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment").

Thus, claims 11, 12, 13, 14 and 15 are futile and may not be

asserted in an amended complaint.  Also, insofar as plaintiff

asserts a claim against all defendants for joint and several

liability and under <u>respondeat</u> <u>superior</u> under Claim 16, any part

of that claim relating to claims 11 through 15 are likewise

futile.  Although not raised by defendants, this Court is

constrained to note that this type of "claim" does not appear to

be a claim at all.  While such a "claim" is perhaps pled in state

court pleadings, these two theories of vicarious liability are

not considered to provide a separate basis for relief apart from

the statutory claim asserted.


<u>CONCLUSION</u>

    For the foregoing reasons, plaintiff's motion for leave to

amend is granted in part and denied in part.  Plaintiff's motion

is denied as to the following claims: all claims brought against

the DDC; the section 1981 claim brought against all defendants;

the section 1983 claims based on retaliation; the section 1983

claims brought against the UCS and the individual defendants in

their official capacities; the NYCHRL claims against the UCS and

the individual defendants in their official capacities; and the

state law tort claims against the UCS and the individual

defendants in their official capacities.

    Plaintiff must submit a further revised proposed amended

complaint in accordance with this order by October 6, 2014.

Specifically, plaintiff must specify, <u>inter</u> <u>alia</u>, which factual

allegations correspond to each claim, eliminate redundant and unnecessary factual detail, limit each paragraph as far as practicable to a single set of circumstances and consider reorganizing the various claims asserted.

**SO ORDERED.**

Dated:     Brooklyn, New York
           September 15, 2014

                                    /s/_____
                                    MARILYN DOLAN GO
                                    UNITED STATES MAGISTRATE JUDGE

| Type of Claim/Persons Dismissed | Claims Affected (by number alleged in the Proposed Revised Amended Complaint) |
|---|---|
| DDC | 1, 2, 4, 5, 6, 7, 8, 9, 11, 12, 13, 15, 16 |
| Section 1981 | 5 |
| Section 1983 claim against defendants in their official capacity | 3, 4, 6, 7, 8, 9, 10 |
| Section 1983 claim for retaliation | 4, 6, 7, 8, 10, 3 (part of claim) |
| NYCHRL claims against defendants in their official capacity | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 (in official capacity) |
| State Tort Claims against defendants in their official capacity | 11, 12, 13, 14, 15, 16, to the extent based on 11-15 |