UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
NICOLE CORRADO,                                         :
                                                        :
                              Plaintiff,                :           **OPINION AND ORDER**
                                                        :           12-CV-1748(DLI)(MDG)
              - against -                               :
                                                        :
NEW YORK UNIFIED COURT SYSTEM,                          :
LUIS GONZALEZ, in his individual capacity,              :
JOHN McCONNELL, in his individual capacity,             :
ROY REARDEN, in his individual capacity,                :
JORGE DOPICO, in his individual capacity,               :
ANGELA CHRISTMAS, in her individual capacity,           :
ALAN FRIEDBERG, in his individual capacity,             :
VINCENT RANIERE, in his individual capacity,            :
NAOMI GOLDSTEIN, in her individual capacity,            :
                                                        :
                              Defendants.               :
----------------------------------------------------------------X
**DORA L. IRIZARRY, U.S. District Judge:**

Before the Court are two defense motions to dismiss the amended complaint for failure to

state a claim upon which relief can be granted.  For the reasons set forth below, the motions are

granted in part, as follows: (i) all claims against defendants Raniere and Friedberg are dismissed,

with prejudice; (ii) Claims Five, Six, and Seven are dismissed as to each defendant that is a natural

person (the "Individual Defendants"), with prejudice; and (iii) those portions of Claims Two and

Three alleging sexual harassment and aiding and abetting sexual harassment are dismissed as to

each Individual Defendant, with prejudice.  As for the six remaining Individual Defendants and

the remaining claims, the motions are denied with respect to: (i) Claim Four; and (ii) those portions

of Claims Two and Three alleging retaliation.  For clarity, the only Individual Defendants who

remain in this action are defendants Gonzalez, McConnell, Rearden, Dopico, Christmas, and

Goldstein; the only claims that survive as to these defendants are Claim Four and the retaliation

allegations contained in Claims Two and Three.

## I. Facts[1]

*The Parties*

Plaintiff Nicole Corrado ("Plaintiff") is an attorney who began her employment with defendant New York State United Court System ("UCS") on November 8, 2001. Amended Complaint ("Am. Compl.," Dkt. Entry No. 86), at ¶¶ 14 and 17. UCS initially hired Plaintiff as an associate attorney, promoting her to the position of Principal Attorney in 2006. *Id.*, at ¶ 20. One of Plaintiff's responsibilities as a Principal Attorney involved investigating cases of attorney misconduct. *Id.*, at ¶ 21. Within UCS, Plaintiff worked in the Department Disciplinary Committee ("DDC"), Appellate Division, First Department ("First Department"). First Motion to Dismiss, filed February, 27, 2015 ("First MTD," Dkt. Entry. No. 119), at 1.

Each of the Individual Defendants worked at UCS at some point during Plaintiff's employment. *See generally,* Am. Compl. The Honorable Louis A. Gonzalez ("Gonzalez") is the Presiding Justice of the First Department. First MTD, at 1. John W. McConnell ("McConnell") is the former Clerk of the First Department, and in December of 2009, became Counsel to UCS. *Id.*, at 21. Roy Reardon, Esq. ("Reardon") is an attorney in private practice with the law firm of Simpson Thacher & Bartlett, LLC ("Simpson Thacher"), and former volunteer chairman of the DDC and its policy committee. *Id.*, at 1. Jorge Dopico ("Dopico") is Chief Counsel to the DDC. *Id.* Angela Christmas ("Christmas") is a DDC Deputy Chief Counsel. *Id.* Alan Friedberg ("Friedberg") is a former DDC Chief Counsel who is now retired. *Id.* Vincent Raniere ("Raniere") is a former Chief Investigator of the DDC who is now retired. *Id.* Finally, Naomi Goldstein ("Goldstein") is a DDC Deputy Chief Counsel. *Id.* According to Plaintiff, each of the Individual

---

[1] The following facts are taken from the amended complaint and are assumed true for the purposes of this Order.

Defendants had supervisory and disciplinary authority over her at some point when she worked at UCS. Am. Compl., at ¶ 16.

*The Sexual Harassment*

Sometime in 2003, a UCS employee named Andral Bratton ("Bratton") became Plaintiff's immediate supervisor and began sexually harassing her. *Id.*, at ¶ 22. Allegedly, Bratton constantly made unwelcome sexually laden comments to Plaintiff, such as "with you Nicole, a little skin showing goes a long way." *Id.*, at ¶¶ 23-25. Bratton frequently called Plaintiff at her home in the evenings and on weekends, exhibiting an obsessive need to speak with her. *Id.*, at ¶¶ 23 and 28. Bratton purportedly would look into Plaintiff's office in order to stare at Plaintiff in a sexually suggestive manner. *Id.*, at ¶ 25. Whenever Plaintiff attempted to discourage Bratton's inappropriate behavior, he would threaten Plaintiff by saying things like "you need to be nice to me." *Id.*, at ¶¶ 23 and 27.

In June of 2007, Plaintiff requested a transfer to another supervisor, but shortly thereafter, Bratton took a two-month medical leave of absence. *Id.*, at ¶¶ 31-32. Upon returning to UCS in August of 2007, Bratton allegedly resumed his sexual harassment of Plaintiff, which continued until sometime in 2008. *Id.*, at ¶¶ 32-33. In June of 2008, Friedberg began to monitor closely Plaintiff's work and wrote "pretextual" memos containing negative accounts of her productivity. *Id.*, at ¶ 34. Friedberg placed these memos in Plaintiff's employee file without disclosing them to Plaintiff. Second Proposed Amended Complaint (Dkt. Entry No. 63), at ¶ 21.q. Plaintiff alleges that Friedberg did this in retaliation for Plaintiff's transfer request, and in retaliation for testimony given by Plaintiff against the DDC in an unrelated racial discrimination lawsuit. *Id.*, at ¶ 21.s.

From 2004 to 2008, Raneire allegedly also sexually harassed Plaintiff by routinely making sexually charged comments to Plaintiff, and often inappropriately kissing and touching Plaintiff.

Am. Compl., at ¶¶ 40-45.  Plaintiff claims she frequently asked Raneire to stop making sexual advances toward her, but the harassment persisted.  *Id.*, at ¶ 45.

*The Retaliation*

On September 17, 2008, Plaintiff allegedly reported to Friedberg that Bratton and Raniere had sexually harassed and threatened her, and that she previously had reported Raniere's sexual harassment to Bratton and to UCS's policy committee.  *Id.*, at ¶¶ 37-38.  She further informed Friedberg that neither Bratton nor the UCS Policy Committee had taken any action to prevent Raniere from sexually harassing Plaintiff.  *Id.*

Friedberg purportedly reported Plaintiff's allegations with respect to Bratton to the UCS Office of Inspector General ("OIG"), but failed to report Plaintiff's allegations as to Raniere.  *Id.*, at ¶ 46.  From September 2008 to November 2008, OIG investigated Plaintiff's allegations against Bratton only.  *Id.*, at ¶ 47.  At the conclusion of the investigation, UCS, along with defendants Gonzalez, McConnell, and Reardon, concluded that, although Bratton's behavior was inappropriate, it did not rise to the level of sexual harassment.  *Id.*, at ¶ 52.  Bratton was transferred to another unit within UCS, but was still permitted unrestricted access to Plaintiff's workspace. *Id.*, at ¶¶ 52-53.

Plaintiff claims that, shortly after the end of the OIG investigation in November of 2008, Friedberg's scrutiny of Plaintiff significantly increased.  *Id.*, at ¶ 50.  He began to reprimand Plaintiff regularly, criticize her work product, and closely monitor all of her activities and movements. *Id.*, at ¶ 51.  According to Plaintiff, Friedberg's attentiveness to Plaintiff's work activities was initiated at the direction of Reardon, Gonzalez, and McConnell.  *Id.*, at ¶ 50.  This was done in order to create pretextual performance issues in retaliation for Plaintiff's formal complaints against Bratton and Raniere.  *Id.*, at ¶ 55.  This concerted campaign of pretextual

negative performance reviews, unreasonable workloads and deadlines, and constant criticism allegedly continued through July of 2009. *Id.*, at ¶ 61. Plaintiff again requested a transfer to another position within UCS, but her request was denied. *Id.*, at ¶ 62.

In May of 2009, Plaintiff filed a complaint with the Equal Opportunity Employment Commission ("EEOC") alleging sexual harassment and retaliation. *Id.*, at ¶ 57. On July 16, 2009, allegedly in retaliation for the EEOC complaint, Friedberg, Gonzalez, McConnell, and Reardon purportedly ordered Plaintiff to appear for a counseling session and stated they would fire her if she did not attend. *Id.*, at ¶ 64. In July or August of 2009, OIG initiated a sexual harassment investigation against Raniere, and, in August, McConnell informed Plaintiff that her allegations against Raniere were unfounded. *Id.*, at ¶ 63 and 65.

*The Ethics Investigation*

In 2008, Plaintiff retained an attorney to represent her in an unrelated state court civil action involving her home. *Id*., at ¶ 73. Plaintiff contends that, in August 2009, Raniere and Friedberg, acting at the direction of Reardon, Gonzalez, and McConnell, initiated an ethics investigation against Plaintiff's attorney in the state court action. *Id.*, at ¶ 74. In May of 2010, Plaintiff's state court attorney abruptly withdrew as counsel, and, shortly thereafter, all ethical charges against the attorney were dismissed as unfounded. *Id.*, at ¶¶ 75-76. However, in 2011, the ethics investigation was reopened allegedly at the direction of Dopico, Christmas, Gonzalez, Reardon, and McConnell. *Id.*, at ¶ 77.

*The First Leave of Absence, This Action, and Additional Retaliation*

These events allegedly caused Plaintiff to suffer severe physical and mental health issues, such as anxiousness, loss of appetite, and insomnia. *Id.*, at ¶¶ 62, 66, and 68. As a result, Plaintiff took a two-year unpaid leave of absence beginning August 24, 2009. *Id.*, at ¶ 66. By the time

Plaintiff returned to her position at UCS in August of 2011, Bratton and Raniere no longer worked at UCS, but the EEOC complaint was still pending. *Id.*, at ¶ 69. Shortly after her return, Plaintiff was "rigorously scrutinized," "strictly monitored" and "further subjected to strict demands." *Id.*, at ¶ 72. On two occasions, when she attempted to sit at her desk, her chair collapsed. *Id.* At other times, while working in her office, she purportedly experienced severe burning in her eyes and blurred vision. *Id.* Plaintiff reported these events to Defendants Dopico, Christmas, and Goldstein. *Id.*

On April 10, 2012, Plaintiff filed this action against UCS only. *See* Original Complaint ("Original Compl.," Dkt. Entry No. 1). Sometime thereafter, for the third time, Plaintiff requested a transfer to another office or agency, which request again was denied. Am. Compl., at ¶¶ 78 and 80. After Plaintiff filed her lawsuit, unnamed UCS "management and staff" continued to treat Plaintiff in a hostile and unduly rigorous manner. *Id.*, at ¶ 81.

*The FMLA Leave of Absence, Continued Retaliation, and the Constructive Discharge*

On March 4, 2013, Plaintiff took a leave of absence under the Family Medical Leave Act ("FMLA") to care for her daughter who was seriously ill (the "FMLA Leave"). *Id.*, at ¶ 83. Plaintiff returned from her FMLA Leave on March 25, 2013. *Id.*, at ¶ 85. Almost immediately upon her return, Dopico and Christmas directed an office manager to deliver to Plaintiff her annual performance evaluation. *Id.* The evaluation was negative, and contained material that Plaintiff describes as "false," "pre-textual," and "retaliatory." *Id.*, at ¶ 85-86. The evaluation also contained performance issues that Plaintiff's supervisors never had raised previously. *Id.*, at ¶ 86. Dopico signed the evaluation, but Plaintiff alleges that Goldstein and Christmas authored it at the direction of Reardon, McConnell, and Gonzalez. *Id.*, at ¶ 87.

Between 2001 and 2007, Plaintiff had received only favorable yearly performance evaluations. *Id.*, at ¶ 89. However, in 2008, after Plaintiff lodged her sexual harassment and retaliation complaint with Friedberg, she began to receive negative annual evaluations. *Id.* The adverse evaluations continued through 2013. *Id.*

On March 25, 2013, Plaintiff again requested a transfer, and was denied. *Id.*, at ¶ 90. On May 8, 2013, Christmas and Dopico ordered Plaintiff to attend a counseling session because of alleged time and leave issues. *Id.*, at ¶ 91. Plaintiff alleges that McConnell, Reardon, and Gonzalez directed Christmas and Dopico to summon Plaintiff for the counseling session. *Id.* Plaintiff states that her "'time and leave' issues were inextricably intertwined with her three-week [FMLA] leave of absence. . . ." *Id.*, at ¶ 92.

Christmas and Dopico ordered Plaintiff to attend a counseling session on July 30, 2013, and Gonzalez ordered Plaintiff to attend a counseling session on August 8, 2013. *Id.*, at ¶¶ 93 and 96. Plaintiff contends that on various occasions, Christmas instigated verbal altercations with Plaintiff, otherwise bullied Plaintiff, and communicated false information about Plaintiff to other UCS employees, including Dopico, Gonzalez, and Reardon. *Id.*, at ¶ 93. Plaintiff alleges that Dopico, Gonzalez, Reardon, McConnell, and Goldstein authorized Christmas to behave in such an intimidating manner toward Plaintiff as another form of retaliation against her. *Id.*, at ¶ 94.

Plaintiff resigned her position on August 7, 2013. *Id.*, at ¶ 98. However, Plaintiff states that her resignation actually was a constructive discharge, because no reasonable person could continue to work in such an adverse environment. *Id.*, at ¶¶ 97-98. Plaintiff alleges that, as a result of the Individual Defendants' actions, she has and will continue to suffer lost earnings, loss of other employment benefits, damage to her reputation, and physical and mental anguish. *Id.*, at ¶¶ 99-102.

## II. Procedural History

On April 10, 2012, Plaintiff filed this action against UCS only, alleging sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. et seq. ("Title VII"). On October 26, 2013, Plaintiff moved to amend her complaint to add defendants Gonzalez, McConnell, Dopico, Reardon, Goldstein, and Christmas ("Motion to Amend," Dkt. Entry No. 59). Plaintiff attached to her Motion to Amend the first proposed amended complaint ("First Proposed Amended Complaint"). *Id.*

On November 8, 2013, UCS moved to dismiss the First Proposed Amended Complaint as futile. (Dkt. Entry No. 62). On November 14, 2013, Plaintiff filed a reply, to which she improperly attached a second proposed amended complaint ("Second Proposed Amended Complaint"), seeking to add Friedberg and Raniere to the action.[2] (Dkt. Entry. No. 63). By order dated November 20, 2013, the magistrate judge ruled that the Second Proposed Amended Complaint superseded the First Proposed Amended Complaint, and directed UCS to respond to the former. On December 11, 2013, UCS filed its opposition to the Second Proposed Amended Complaint, arguing that, it too was futile (Dkt. Entry No. 69).

By order dated September 15, 2014, ("Sept. 15 Order") the magistrate judge granted in part and denied in part the Second Proposed Amended Complaint, and directed Plaintiff to submit a further revised proposed amended complaint in accordance with the Sept. 15 Order.[3] On November 5, 2014, Plaintiff filed the Amended Complaint that is currently before the Court. (Dkt. Entry No. 86).

---

[2] The Second Proposed Amended Complaint sought to add Friedberg and Raniere in addition to the six defendants she sought to add in the First Proposed Amended Complaint. Thus, the Second Proposed Amended Complaint sought to add all eight of the Individual Defendants.

[3] The Sept. 15 Order is discussed further below.

The Amended Complaint asserts seven claims against defendants pursuant to Title VII, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., ("FMLA"), and state tort law. *See* Am. Compl., at V. Claim One is a Title VII claim against USC only. *Id.*, at 22-23. Claims Two and Three allege that all defendants violated the NYSHRL and the NYCHRL, respectively, by aiding and abetting, and/or subjecting Plaintiff to sexual harassment, and by retaliating against her for complaining about the sexual harassment. *Id.*, at 23-24. Claim Four is a claim under the FMLA, alleging that UCS, Christmas, Dopico, Gonzalez, Reardon, McConnell, and Goldstein retaliated against Plaintiff for exercising her rights under the FMLA. *Id.*, at 25. Claim Five alleges that Christmas, Dopico, Gonzalez, Reardon, McConnell, and Goldstein violated the NYCHRL by retaliating against Plaintiff for exercising her rights under the FMLA. *Id.* Claim Six is a negligent supervision claim against all defendants and, finally, Claim Seven is an intentional infliction of emotional distress ("IIED") claim against all defendants. *Id.*

The Individual Defendants filed two separate motions to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Gonzalez, McConnell, Rearden, Dopico, Christmas, Friedberg, and Goldstein filed their motion to dismiss through counsel on February 27, 2015. *See* First MTD. Reardon also moved to dismiss under Rule 12(b)(2) and (5).[4] First MTD, at 2-3. Raniere filed a separate motion to dismiss through different counsel on March 27, 2015 (the "Raniere MTD," Dkt. Entry No. 134). Plaintiff opposes both motions.

---

[4] Reardon is the only Individual Defendant who moves for dismissal under Rule 12(b)(2) and (5).

**DISCUSSION**

**I. Reardon's Motion to Dismiss Pursuant to Rule 12(b)(2) and (5)**

Reardon moves to dismiss the amended complaint against him for lack of personal jurisdiction based on insufficient service of process under Rule 12(b)(2) and (5), and for failure to state a claim under Rule 12(b)(6). First MTD, at 2-3. In this situation, "the Court must first address the preliminary questions of service and personal jurisdiction" before considering the legal sufficiency of the allegations in the amended complaint. *Hertzner v. U.S. Postal Serv.*, 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007) (quoting *Mende v. Milestone Tech., Inc.,* 269 F. Supp.2d 246, 251 (S.D.N.Y. 2003); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir.1963) ("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim.").

*Plaintiff's First Attempt to Serve Reardon in December 2014*

Plaintiff filed the Amended Complaint on November 5, 2014. On January 6, 2015, Plaintiff filed an affidavit of service (the "Jan. 6 Affidavit of Service") bearing the name and signature of the process server, Raymond Hollingsworth of Lawson Legal Services (Dkt. Entry No. 99). Jan. 6 Affidavit of Service, at 1. The notary's signature, which appears next to Hollingsworth's signature, is dated December 24, 2015. *Id.* The Jan. 6 Affidavit of Service further states in relevant part as follows:

- On December 22, 2014, at 2:19 p.m., Hollingsworth served a copy of the amended summons and amended complaint on a person named "Jacqueline C." *Id.*

- Jacqueline C is a "paralegal" employed at Simpson Thacher, located at "425 Lexington Avenue, New York, NY, 10017." *Id.* Hollingsworth served Jacqueline C at this address. *Id.*

- Jacqueline C is a person authorized to accept service for Roy Reardon. *Id.*

- A copy of the amended summons and amended complaint "was also mailed via USPS First Class mail within 20 days upon service." *Id.*

*The Individual Defendants Give Notice of Service Issues*

By letter filed January 8, 2015, counsel for the Individual Defendants, the Office of the Attorney General for the State of New York (the "OAG"),[5] advised the Court that it was evaluating whether service of process was proper. (Dkt. Entry No. 102). By letter filed January 20, 2015, the OAG advised the Court that improper service of process was still "under review." (Dkt. Entry No. 107). On February, 24, 2015, counsel for UCS, Lisa Evans, filed a status report letter addressed to the magistrate judge advising that, on January 6, 2015, Evans informed Plaintiff's counsel, Ambrose Wotorson, that service was deficient regarding several of the Individual Defendants, including Reardon. (Dkt. Entry. No. 111).

By letter dated February 24, 2015, the OAG advised the Court that the Jan. 6 Affidavit of Service was inaccurate. (the "OAG Feb. 24 Letter," Dkt. Entry. No. 112, at 2). According to the OAG Feb. 24 Letter, although the process server visited the Simpson Thacher office on December 22, 2014, he did not leave copies of the amended summons and amended complaint, and copies of these documents were not mailed to Reardon. *Id.* Wotorson promptly responded to the allegations in these two letters by filing his own letter, also dated February 24, 2015 (the "Wotorson Feb. 24 Letter," Dkt. Entry. No. 113). Wotorson claimed that, although he spoke to Evans on January 6, 2015, she did not inform him at that time that service on Reardon was defective; in fact, according to Wotorson, at no time prior to February 24, 2015 had Evans or OAG ever informed him of any service issues with respect to Reardon. *Id.*, at 2.

---

[5] The OAG represents all of the Individual Defendants except Raniere, who is represented by his own counsel.

*Reardon Disputes the First Service Attempt*

On February 27, 2015, the Individual Defendants filed the First MTD, in which Reardon raised his Rule 12(b)(2) and (5) argument. (Dkt. Entry No. 119). In support of the motion, Jacqueline Williams submitted a sworn declaration (the "Williams Declaration" Dkt. Entry No. 122) attesting to the following:

- Williams was the Managing Clerk at Simpson Thacher on December 24, 2014, on which date Reardon was on vacation. *Id.*, at ¶ 1.

- Service was never attempted on December 22, 2014 as stated in the Jan. 6 Affidavit of Service; service was attempted on the afternoon of December 24, 2014. *Id.*, at ¶ 2.

- On December 24, 2014, Williams informed the process server that she was not authorized to accept service for Reardon, and she told the process server that she would contact Reardon to ask him if he authorized Williams to accept service on his behalf. *Id.*, at ¶ 3. Williams suggested that the process server return on Monday, December 29, 2014, by which time she expected to have an answer from Reardon. *Id.*

- The process server told Williams that he would return the following week. *Id.*, at ¶ 4. The process server did not leave any papers with Williams on December 24, 2014, nor did Williams or the Managing Clerk's office ever receive any papers at any time thereafter. *Id.*

- The process server did not return the following week. *Id.*, at ¶ 5.

Williams attached to her declaration an email from her to Reardon dated December 24, 2014, wherein she asked if she was authorized to accept service. Reardon also submitted a sworn declaration on February 27, 2015 (the "Reardon Declaration," Dkt. Entry No. 121) in support of the First Motion to Dismiss. The only relevant additional information in the Reardon Declaration is that, during the period in question, Reardon's actual place of business was 425 Lexington

Avenue, New York, NY, 10017. Reardon Decl., at ¶ 7. This is the same address at which Hollingsworth claims he attempted service on December 22, 2014. Jan. 6 Affidavit of Service.

*Plaintiff's Second Attempt to Serve Reardon*

On March 14, 2015, Plaintiff filed her opposition to the First MTD, which not only was untimely, but also failed to address Reardon's insufficient service argument. *See* Local Civil Rule 6.1(b) (requiring service of opposing papers within 14 days after service of moving papers); *see generally*, Pl. Opp. to First MTD (no discussion of Rule 12(b)(2) and (5) issues)).[6] On March 19, 2015, without leave of the Court, Plaintiff filed an amended opposition to the First MTD (Dkt. Entry No. 125), which did address the service issue. Pl. Am. Opp. to First MTD, at 4. Plaintiff improperly sought "leave" to amend her opposition *after* she had already filed it (Dkt. Entry No. 127). Accordingly, by Order dated March 20, 2015, the Court struck both the motion to amend the opposition and the amended opposition itself.

Also on March 19, 2015, Plaintiff filed a second affidavit of service (the "Mar. 19 Affidavit of Service," Dkt. Entry No. 126). The Mar. 19 Affidavit of Service bears the name and signature of the process server, Robert Lawson of Lawson Legal Services. *Id.*, at 1. The Mar. 19 Affidavit of Service further states as follows:

- On March 6, 2015, at 2:40 p.m., Lawson served a copy of the amended summons and amended complaint on "John Doe." *Id.*

---

[6] Despite its untimeliness, the Court will not strike Plaintiff's opposition to the First MTD. Because it fails to address the service issue, it offers Plaintiff no help here. Indeed, the Court may deem waived any opposition to dismissal on this ground. *See Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd.*, 2014 WL 4175914, at *5 (E.D.N.Y. Aug. 20, 2014) ("Plaintiff has not responded to Defendants' arguments regarding service of process upon [one of the defendants] and accordingly has waived any argument with respect to service of process."); *LBF Travel, Inc. v. Fareportal, Inc.*, 2014 WL 5671853, at *16 (S.D.N.Y. Nov. 5, 2014) (collecting cases) ([B]ecause [plaintiff] has not disputed defendants' arguments on this issue, we deem its claims on this point to be abandoned. . . ."). However, Plaintiff does argue against dismissal on 12(b)(6) grounds, which is discussed below.

- John Doe is a "building concierge/Simpson Thacher employee." Lawson served John Doe at the address of "425 Lexington Avenue, Building Lobby, New York, NY, 10017." *Id.*

- John Doe is a person authorized to accept service for Roy Reardon. *Id.*

- A copy of the amended summons and amended complaint "was also mailed via USPS First Class mail within 20 days upon service." *Id.*

In the "Additional Information" section of the Mar. 19 Affidavit of Service, Lawson represents that:

- On the morning of March 6, 2015, Lawson contacted Reardon via telephone to ask if Reardon would come to the lobby to accept service that afternoon. *Id.* Reardon responded "no." *Id.*

- When Lawson attempted service that afternoon, the building concierge refused to accept service. *Id.* Lawson left the documents on the counter, and the concierge attempted to return the documents to Lawson. *Id.* When Lawson refused, the concierge threw the documents at Lawson, who let them fall to the ground, where he left them. *Id.*

On March 20, 2015, the Individual Defendants filed their reply (the "Reply," Dkt. Entry. No. 129) to Plaintiff's opposition to the First MTD. The Reply concedes that Reardon was served at his office on March 6, 2015, and that he received a copy of the amended summons and amended complaint by mail on March 10, 2015. Reply, at 9. However, Reardon maintains that under Rule 4(m), the March 6 service was untimely as it occurred 121 days after Plaintiff filed the amended complaint on November 5, 2014. Reply, at 10 (citing Fed.R.Civ.P 4(m) requiring service within 120 days after the complaint is filed).[7] Reardon's challenge to Plaintiff's service of process is in

---

[7] Rule 4(m) and its application in this case is discussed in greater detail below.

two parts. First, he claims that the December service[8] was timely, but improper. First MTD, at 24. He then attacks the March 6 service as proper, but untimely. Reply, at 9-10. Reardon contends the Amended Complaint should be dismissed as to him, because he has never been properly *and* timely served.

*Reardon's Affidavits Raise an Issue of Fact Regarding the December Service*

When a defendant challenges service of process, the plaintiff bears the burden of proving, through admissible evidence, the adequacy of service. *See Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010); *see generally Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005); *Hertzner*, 2007 WL 869585, at *3 (citations omitted). A plaintiff may carry this burden by submitting a process server's affidavit that establishes a rebuttable presumption of proper service. *Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2001) (citing *NYCTL 1997-1 Trust v. Nillas*, 288 A.D.2d 279, 7332 (2d Dep't 2001)). A defendant may rebut this presumption through a sworn affidavit in which the defendant denies receipt of service. *Id.*, at 57-58 (citing *Skyline Agency, Inc. v. Ambrose Coppotelli, Inc.*, 117 A.D. 2d 135. (2d Dep't 1986)); *Id.*, at 58 (quoting *Simonds V. Grobman*, 277 A.D.2d 369 (2d Dep't 2000) (defendant must swear to "specific facts" to rebut presumption)). Where a defendant's affidavit successfully rebuts the presumption of proper service, the Court must hold an evidentiary hearing. *Id.* (citing *Skyline*, 117 A.D.2d at 135). A district court's failure to hold an evidentiary hearing in this situation is reversible error. *Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983).

In this case, Plaintiff elected to serve Reardon in accordance with Rule 4(e)(1), which states in relevant part that an individual may be served in the United States by following the law of the

---

[8] Because the parties dispute whether the first attempt at service occurred on December 22, 2014 or December 24, 2014, the Court refers to this event as the December service, as it was within the requisite 120-day period required by Rule 4(m) in either event.

state where service is made.  Fed. R. Civ. P. 4(e)(1).[9]  In New York, one of the methods by which a party may complete service is through the two-step process set forth in New York's Civil Practice Law and Rules ("C.P.L.R.") § 308(2).  First, a plaintiff must deliver the summons to "a person of suitable age and discretion" at the defendant's "actual place of business." C.P.L.R. § 308(2) (McKinney 2015).  Second, the plaintiff must mail the summons by first class mail to the defendant at his or her "actual place of business."  *Id.*

The parties dispute three factual issues with respect to the December service: (i) whether the process server actually left a copy of the amended summons and amended complaint with Williams; (ii) whether the process server mailed copies of these documents to Reardon; and (iii) whether the process server attempted service on December 22 or December 24.  At the outset, the Court can dispense with the third issue as irrelevant.  It makes no difference whether these events took place on December 22nd or December 24th, because service would have been timely either way.  The issue with the December service is whether it was *proper*, not whether it was *timely*.

Regarding the second issue (mailing), New York state courts have held that, as long as the plaintiff can show that she used the proper address, the defendant need not actually receive the summons through the mail in order for service to be effective.  *See Melton v. Brotman Foot Care Grp.*, 198 A.D.2d 162 (1st Dep't 1993) (discussing the requirements of C.P.L.R § 308 (2)).  The court's jurisdiction attaches at the time of mailing.  *Id.*  Hollingsworth's affidavit of service states that he mailed the summons to Reardon's actual place of business.  Thus, Reardon's assertion that he never *received* the summons via mail will not defeat Hollingsworth's sworn declaration that he mailed it.

---

[9] Plaintiff attempted this method of service for both the December service and the March 6 service.

However, the first issue, whether Hollingsworth actually left copies of the amended summons and amended complaint with Williams, cannot be resolved on the basis of the conflicting affidavits. Hollingsworth's affidavit states that he left these documents with Williams and Williams' affidavit states that he did not. While the Court normally would need to conduct an evidentiary hearing to resolve this dispute, for the reasons discussed below, the Court holds that no such hearing is necessary.

*While the March 6 Service was Untimely, the Deadline is Extended for Good Cause*

Timeliness of service is governed by Rule 4(m), which states that, if a plaintiff fails to serve a defendant within 120 days after the complaint is filed, a court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). A court must extend the 120-day deadline if a plaintiff can demonstrate "good cause" as to why she failed to timely serve process. *Id.* Courts consider two factors in determining whether good cause is shown: "(1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to the moving defendants from the delay." *Lab Crafters, Inc. v Flow Safe, Inc.*, 233 F.R.D. 282, 284 (E.D.N.Y. 2005) (quoting *Blessinger v. U.S.*, 174 F.R.D. 29, 31 (E.D.N.Y. 1997)). The "inadvertence, neglect, or mistake" of an attorney will not satisfy the good cause standard. *Id.* at 284 (quoting *Myers v. Sec'y of the Dep't of the Treasury*, 173 F.R.D. 44, 46 (E.D.N.Y. 1997)). "Additionally, a mistaken belief that service was proper does not establish good cause." *Tieman v. City of Newburgh*, 2015 WL 1379652, at *9 (S.D.N.Y. Mar. 26, 2015) (quoting *Bernstein v. Vill. of Piermont*, 2012 WL 6625231, at *3 (S.D.N.Y. Dec. 20, 2012)). However, "[t]he determination of good cause under Rule 4 is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice."

*Am. Intern. Tel., Inc. v. Mony Travel Servs., Inc.*, 203 F.R.D. 95, 97 (2001) (quoting *Snall v. City of New York*, 1999 WL 1129054, *3 (E.D.N.Y. Oct. 19, 1999)).

Courts within this circuit generally have found good cause when a defendant has been evasive or uncooperative with respect to a plaintiff's diligent attempts at service. *See Gerena v. Korb*, 617 F.3d 197, 200 (2d Cir. 2010) (multiple attempts at service resulted in district court finding that defendant was "playing cat-and-mouse game with plaintiffs regarding service"); *Am. Intern.*, 203 F.R.D., at 96 (process server denied access to defendant's residence by building security guard); *Blessinger*, 38 F.R.D., at 31. ("The Court has every reason to believe that the [defendant]. . . did evade the service  . . . with the hope of having the entire matter disposed of without having to address the merits of [p]laintiff's claims."); *id.* (citing Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment).

Here, Reardon concedes that, in late December, Hollingsworth came to Reardon's "actual place of business" and attempted to effectuate service. C.P.L.R § 308 (2). He acknowledges that Williams refused to accept service on Reardon's behalf, apparently based on William's belief that she was not authorized to do so. This refusal was improper under New York law. *See Charnin v. Cogan*, 250 A.D.2d 513, 517-18 (1st Dep't 1998) (holding that service attempted on a defendant's receptionist cannot be "undermined or defeated by an employer policy discouraging or even prohibiting service of process"). Reardon further does not dispute any of the statements in Lawson's affidavit regarding the March 6 service. Thus, the Court accepts as true that Reardon told Lawson that he would not come to the lobby to accept service, and that the building concierge refused service on Reardon's behalf. These facts are sufficient to establish that Plaintiff's efforts to serve Reardon were both reasonable and diligent, and Reardon's efforts to avoid service were unreasonable.

This conclusion is in no way affected by the letters of OAG or Evans that purport to have put Plaintiff on notice that her service on Reardon was ineffective. The OAG letters merely assert generalities such as "[OAG] continue[s] to evaluate whether, in several instances, the purported service of process was insufficient." Such vague allusions to the *possibility* of defective service could not have put Plaintiff on notice that Reardon had not been served properly. While Evans claims to have told Wotorson on January 6 that Reardon had not been served properly, Wotorson disputes that Evans said this. Even accepting Evans' version of events, the Court nonetheless finds that Plaintiff's efforts were reasonable and diligent.

As to the prejudice prong of the good cause test, Reardon appears to have suffered no prejudice as a result of the allegedly defective and untimely service. As an initial matter, the second service of process was outside the 120 day deadline by only one day. Moreover, Reardon already was aware that Plaintiff was attempting to serve him with a summons and complaint. Importantly, if the Court were to dismiss the case against him on untimely service grounds, it necessarily would be without prejudice. *See* Rule 4(m). Therefore, because many of Plaintiff's claims would not be time barred if she refiled, Reardon would end up in exactly same position he is in now. Moreover, OAG has vigorously and competently represented Reardon's interests in this matter, particularly through the First MTD. Indeed, as will be discussed in further detail below, several of Plaintiff's claims against the Individual Defendants, including Reardon, are dismissed. Significantly, Reardon cannot evade service in the manner he has, and then complain that he was prejudiced by not receiving service.

For the foregoing reasons, the Court holds that Plaintiff has shown good cause pursuant to Rule 4(m), and her time to serve Reardon is extended, *nunc pro tunc*, to March 11, 2015.

Accordingly, because the March 6 service was proper and timely, Reardon's motion to dismiss on 12(b)(2) and (5) grounds is denied.

## II. The Law of the Case Doctrine

Plaintiff contends that the Sept. 15 Order granting Plaintiff leave to amend her complaint should bar all of Raniere's 12(b)(6) arguments under the law of the case doctrine. Pl. Opp. to Raniere MTD., at 7. Plaintiff did not assert this argument in opposition to the First MTD. *See generally*, Pl. Opp. to First MTD.

The law of the case doctrine provides that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *U.S. v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009) (quoting *U.S. v. Quintieri,* 306 F.3d 1217, 1225 (2d Cir. 2002) (citations and internal quotation marks omitted). "Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Sagendorf–Teal v. Cty. of Rensselaer,* 100 F.3d 270, 277 (2d Cir.1996); *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001); *Crysen/Montenay Energy Co. v. Shell Oil Co. and Scallop Petroleum Co.* (*In re Crysen/Montenay Energy Co.*), 226 F.3d 160, 165 n.5 (2d Cir. 2000). However, this discretion is limited, as the doctrine "may be properly invoked only if the parties had a full and fair opportunity to litigate the initial determination." *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 219 (2d Cir.2002).

The Sept. 15 Order addressed the question of whether it would be futile to permit Plaintiff to amend her complaint pursuant to Rule 15(a). Sept. 15 Order, at 13-14. As the magistrate judge correctly noted, a court must analyze a futility argument under Rule 15(a) in the same way it would address a 12(b)(6) motion to dismiss. *Id*., at 14 (citing *Majad ex rel. Nokia Ret. Sav. And Inv. Plan v. Nokia, Inc.*, 528 F. App'x 52, 53 (2d Cir. 2013); *Nettis v. Levitt*, 241 F.3d 186, 194 n. 4 (2d Cir.

2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss.").  Applying the 12(b)(6) analytical framework, the magistrate judge issued a thorough, well-reasoned decision in which she held that it would not be futile for Plaintiff to re-plead some of her proposed causes of action and to add the Individual Defendants to the lawsuit. *See generally,* Sept. 15 Order.  Plaintiff now argues that, because the Sept. 15 Order held that the Amended Complaint would not be futile on 12(b)(6) grounds, the law of the case doctrine should preclude Raniere from asserting his 12(b)(6) arguments here.  Pl. Opp. to Raniere Mot. Dis., at 7.

One of the few cases from this circuit that substantively has addressed the law of the case doctrine in the context of a motion to dismiss made after a futility determination is *Firestone v. Berrios*, 42 F. Supp.3d 403 (E.D.N.Y. 2013).[10]  In *Firestone*, a New York state court plaintiff sought leave to amend her complaint to re-plead some of her causes of action, but she did not seek to add or drop any of the defendants.  *Id.*, at 409.  The defendants objected to the proposed amended complaint on the grounds that it failed to state a claim.  *Id.*, at 411.  In a lengthy opinion discussing the relevant motion to dismiss standard, the court granted plaintiff's motion to amend.  *Id.*  The defendants then removed the action to federal court and promptly filed a motion to dismiss the amended complaint.  *Id.*

The federal district court judge held that the state court decision in favor of the plaintiff was law of the case.  *Id.*, at 412.  The court relied on the fact that the state court had thoroughly analyzed the proposed amended complaint under the motion to dismiss standard.  *Id.*, at 413. Accordingly, the federal court concluded that "[i]t would not serve the jurisprudential desire to

---

[10] While the Raniere MTD cites two cases from this district in support of its position, neither of these cases is particularly illuminating.  Each case only tangentially touches upon the issue at hand, without offering any substantive analysis.  *See Care Envtl. Corp. v. M2 Techs., Inc.*, 2006 WL 148913, at *8 n.9 (E.D.N.Y. Jan. 18, 2006) *and Mathie v. Fries*, 935 F. Supp. 1284, 1301 (E.D.N.Y. 1996).

maintain consistency and avoid reconsideration of matters once decided during the course of a single lawsuit if this Court were to revisit identical issues that were previously raised by the [d]efendants in the [s]tate [c]ourt." *Id.*

The Court finds this rationale persuasive, but inapplicable to the instant case, despite the procedural similarities. Whereas in *Firestone*, all of the defendants were parties to the case *before* the plaintiff sought to amend her complaint, in this case, none of the Individual Defendants were parties to the action at the time Plaintiff moved to amend her complaint. Indeed, one of the main purposes of amending the complaint was to add the Individual Defendants. This distinction is critical, because as noted above, a court may apply the law of the case doctrine "only if the parties had a full and fair opportunity to litigate the initial determination." *Westerbeke* 304 F.3d, at 219. Here, while the magistrate judge's "initial determination" thoroughly addressed the 12(b)(6) standard, it did so only with respect to the sole defendant at the time, UCS. At that point, the Individual Defendants had no opportunity, much less a full and fair one, to advance their own arguments in support of dismissal, because they were non-parties. *See* 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.5 (2d ed. 2015) ("[A] party joined in an action after a ruling has been made should be free to reargue the matter without the constraints of law-of-the-case analysis."). Accordingly, the Court declines to apply the law of the case doctrine to the Raniere MTD.[11]

## III. Rule 12(b)(6)

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give

---

[11] Plaintiff did not raise the law of the case doctrine in opposition to the other Individual Defendants' motion to dismiss the Amended Complaint and, thus, has waived this argument as to them. In any event, the argument is meritless as to the other Individual Defendants for the same reasons it is not successful as to Raniere.

the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Notably, courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

A defendant properly may move under Rule 12(b)(6) to dismiss a claim as time barred by the statute of limitations. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989) (citing *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 360 (D.C.Cir. 1982) ("Where the dates

in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter.")); *Francis v. Blaikie Grp.*, 372 F. Supp. 2d 741, 743 (S.D.N.Y. 2005) (quoting *Ghartey*, 869 F.2d, at 162).

**(A) Raniere and Friedberg**

The amended complaint asserts four causes of action against Raniere and Friedberg: (i) sexual harassment and retaliation under NYSHRL; (ii) sexual harassment and retaliation under NYCHRL; (iii) negligent supervision; and (iv) intentional infliction of emotional distress. *See* Am. Compl., at V. Raniere and Friedberg move to dismiss all claims on the grounds that they are time barred by the statute of limitations, or in the alternative, that they fail to state a claim. *See generally*, First MTD and Raniere MTD. As the Court concludes that each claim is time barred, it need not reach the question of whether these causes of action fail to state a claim.

Plaintiff's claims under the NYSHRL and NYCHRL are governed by a three-year statute of limitations. C.P.L.R. § 214(2) (McKinney 2015) and New York City Administrative Code ("Admin Code") § 8-502(d); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("[C]laims under the NYSHRL and the NYCHRL are time-barred unless filed within three years of the alleged discriminatory acts. . . ."). Similarly, in New York, negligent supervision claims also have a three-year statute of limitations. C.P.L.R. § 214; *Walker v. Lorch*, 2013 WL 3358013, at *4 (S.D.N.Y. July 2, 2013) (citing *Green v. Emmanuel African Methodist Episcopal Church*, 278 A.D.2d 132 (1st Dep't 2000)); *Weil v. Long Island Sav. Bank, FSB*, 77 F. Supp. 2d 313, 324 (E.D.N.Y. 1999) (citing C.P.L.R. § 214 (McKinney 1990)). A cause of action alleging intentional infliction of emotional distress must be filed within one year of the events giving rise

to the claim. C.P.L.R § 215(3); *Patterson v. Balsamico*, 440 F.3d 104, 112, n.4 (2d Cir. 2006) (citing *Jemison v. Crichlow*, 139 A.D.2d 332, 337 (2nd Dep't 1988)).

In the Second Circuit, "[w]hen a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes." *Bensinger v. Denbury Res. Inc.*, 31 F. Supp. 3d 503, 508 (E.D.N.Y. 2014) (quoting *Rothman v. Gregor,* 220 F.3d 81, 96 (2d Cir.2000) (citations and internal quotation marks omitted)). For the purposes of calculating the statute of limitations period, Plaintiff commenced her action against Raniere and Friedberg on November 14, 2013, the date on which she filed her motion to amend the complaint to add these defendants. Therefore, as to the NYSHRL, NYCHRL, and negligent supervision claims, the amended complaint must allege that the relevant events occurred on or after November 15, 2010. Plaintiff's cause of action for intentional infliction of emotional distress must be based on events alleged to have occurred on or after November 15, 2012.

Here, Plaintiff alleges that Raniere sexually harassed her between 2004 and 2008. Am. Compl., at ¶ 40. Therefore, none of Raniere's alleged sexual harassment will support any of Plaintiff's claims, a point Plaintiff concedes in her opposition. *See* Pl. Opp. to Raniere MTD, at 14, n.1. Rather, Plaintiff argues that her NYSHRL, NYCHRL, and negligent supervision claims are not time barred, because Raniere's retaliation continued into the statutory period. *Id.*, at 14. As to Friedberg, the amended complaint alleges that he retaliated against Plaintiff, in the form of increased scrutiny, draconian workloads, pretextual counseling sessions, and denied transfer requests, between June 2008 and July 2009. *See generally*, Am. Compl., at ¶¶ 34, 37-38, 46, 50-51, 53, 55-56, 58-61, 63-64. These allegations also fall outside the statute of limitations periods.

The latest occurring allegation against both Raniere and Friedberg pertains to the ethics investigation involving Plaintiff's state court attorney in August 2009. Am. Compl., at ¶ 74. UCS dismissed the ethics charges in May of 2010, but the Amended Complaint does not state which of the Individual Defendants participated in this decision. *Id.*, at ¶ 75. Rather, the Amended Complaint simply alleges that, in May 2010, "the ethical charges against Plaintiff's attorney . . . were dismissed as unfounded." *Id.* Nevertheless, for the purposes of this statute of limitations analysis, the Court construes the Amended Complaint in the light most favorable to Plaintiff to allege: (i) that Raniere and Friedberg participated in the decision to dismiss the ethics charges, and (ii) that the dismissal of the ethics charges was a retaliatory act. Therefore, even under the most generous construction of the Amended Complaint, the latest act of retaliation Plaintiff alleges against Raniere and Friedberg occurred in May 2010, six months outside the applicable limitations period.

In an attempt to circumvent this problem, Plaintiff argues for the first time in her opposition to the Raniere MTD that her retaliation claims against Raniere are timely under the continuing violation doctrine. Pl. Opp. to Raniere MTD, at 14-16.[12] The continuing violation doctrine provides that, "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington v. Cty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001)). "It is well-established that the 'continuing violation' doctrine cannot save untimely claims for discrete discriminatory acts, even where those discrete acts are related to acts within the limitations period . . . ." *Bright v. Coca Cola*

---

[12] Plaintiff's opposition to the First MTD did not raise the continuing violation doctrine; indeed it only tangentially addressed the statute of limitations issue at all. *See id*., at 10. However, even if Plaintiff had raised the continuing violation doctrine against Friedberg, the argument would fail for the same reasons it fails as to Raniere.

*Refreshments USA, Inc.*, 2014 WL 5587349, at *4 (E.D.N.Y. Nov. 3, 2014) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (emphasis added)). Similarly, a plaintiff cannot establish a continuing violation "merely because the claimant continues to feel the effects of a time-barred discriminatory act." *McFadden v. Kralik*, 2007 WL 924464, at *7 (S.D.N.Y. Mar. 28, 2007) (citing *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999)). Finally, "the continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Bright*, 2014 WL 5587349, at *4 (quoting *Trinidad v. New York City Dept. of Corr.*, 423 F. Supp.2d 151, 165 n. 11 (S.D.N.Y. 2006) (quotations omitted)).

Plaintiff contends that her claims are timely under the continuing violation doctrine, because Raniere's actions, which clearly occurred outside the limitations period, affected events that occurred later, within the limitations period. *See e.g.*, *Id.*, at 14 ("Raniere encouraged . . . other defendants' relentless micromanagement, thereby *causing* [P]laintiff's unpaid leave of absence. . . .") (emphasis added); *Id.* ("Raniere's . . . decision to pursue a[] . . . retaliatory ethics investigation . . . *directly influenced* [P]laintiff's attorney to withdraw from her civil matter in the spring of 2010. . . .") (emphasis added); *Id.*, at 15 ("Raniere . . . set off a deliberate, retaliatory, unbroken chain of events, [*sic*] which ultimately *culminated* in [P]laintiff's constructive discharge.") (emphasis added).

These arguments amount to nothing more than an attempt to apply the continuing violation doctrine "because [Plaintiff] continue[d] to feel the effects of a time-barred discriminatory act." *McFadden*, 2007 WL 924464, at *7. Furthermore, the decisions to initiate and dismiss the ethics investigation clearly were discrete acts, as opposed to acts taken "in furtherance of" "a continuous practice and policy of discrimination." *Washington*, 373 F.3d, at 317. Plaintiff's *post hoc* attempts

to "save [her] untimely claims" under the guise of the continuing violation doctrine, therefore, must fail. *Bright*, 2014 WL 5587349, at *4.

All four causes of action against Raniere and Friedberg are time-barred, and these defendants are dismissed from this action, with prejudice.

## (B) The Remaining Individual Defendants

The Amended Complaint asserts the following six causes of action against all six of the remaining Individual Defendants: (i) aiding and abetting sexual harassment, subjecting Plaintiff to sexual harassment, and retaliation under the NYSHRL (Claim Two); (ii) aiding and abetting sexual harassment, subjecting Plaintiff to sexual harassment, and retaliation under the NYCHRL (Claim Three); (iii) retaliation for the Plaintiff's March 2013 FMLA Leave under the FMLA (Claim Four); (iv) retaliation for the FMLA Leave under the NYCHRL (Claim Five); (v) negligent supervision (Claim Six); and (vi) intentional infliction of emotional distress (Claim Seven).

The Individual Defendants move to dismiss all of these claims under a variety of legal theories; however, as a threshold matter, those portions of Claims Two and Three that allege that the Individual Defendants aided and abetted sexual harassment, or subjected Plaintiff to sexual harassment, are time barred.

> (i)     *Aiding and Abetting Sexual Harassment and*
>         *Sexual Harassment – Claims Two and Three*

The Amended Complaint alleges that the sexual harassment of Plaintiff by Raniere and Bratton ended in 2008. Am. Compl., at ¶¶ 23 and 40. To the extent the Amended Complaint alleges that the remaining Individual Defendants aided and abetted or subjected Plaintiff to sexual harassment, these claims are time barred, because such conduct necessarily would have occurred at the time of the harassment. The only remaining allegations that logically could fall within the statutory period are those based on retaliation. Indeed, Plaintiff herself concedes that the remaining

Individual Defendants "cannot be held individually liable for sexual harassment at this late stage," and that the Amended Complaint "primarily sounds in retaliation. . . ." Pl. Opp. to First MTD., at 10.

> *(ii)    Retaliation Under the NYSHRL and the NYCHRL – Claims Two and Three*

The Individual Defendants assert a statute of limitations defense as to the NYSHRL and the NYCHRL claims (Claims Two and Three, respectively).[13] First Mot. Dis., at 7-11. The First MTD does not argue for dismissal of these claims on implausibility grounds. *See generally, Id.* As noted above, the relevant limitations periods for each of these claims is three years. Plaintiff moved to amend her complaint against these six Individual Defendants on October 26, 2013, which means that the amended complaint must allege that the events giving rise to claims two and three occurred on or after October 27, 2010.

Many of Plaintiff's allegations against Reardon, Gonzalez, and McConnell with respect to these claims occur outside the limitations period. *See e.g.*, Am. Compl., at ¶ 50 (Reardon, Gonzalez, and McConnel "direct[ed]" and "approv[ed]" Friedberg's strict monitoring of Plaintiff in November 2008); *id.*, at ¶ 61 (Reardon, Gonzalez, and McConnell imposed draconian workloads on Plaintiff from January 2009 through July 2009). However, Plaintiff does allege that all six of the remaining Individual Defendants participated in the negative performance evaluation she received in March 2013 after returning from her FMLA Leave. *Id.*, at ¶¶ 85-89. The Individual Defendants argue that this negative performance evaluation can only support Plaintiff's retaliation claim under the FMLA (Claim Four). First MTD., at 10-11. In essence, they argue that Plaintiff has alleged that the negative performance evaluation from March 2013 was issued in retaliation for the FMLA Leave only, but not in retaliation for any of Plaintiff's prior protected activity in

---

[13] The Individual Defendants concede that Claim Four, Plaintiff's claim of retaliation under the FMLA for the March 2013 leave of absence, is not time barred. *See* First Mot. Dis., at 10, n.1.

2008-2009 (the "Protected Activity"), such as the filing of the EEOC complaint. *Id.*, at 11 ("[T]he FMLA retaliation claims are separate and distinct from any claims arising out of . . . retaliation for complaints of sexual harassment. . . ."). Under this theory, because the negative performance review is strictly confined to the FMLA Leave, then there are no allegations that support retaliation under Claims Two and Three. The Court disagrees.

First, the Individual Defendants contradict themselves on this point. In the First MTD, the Individual Defendants claim that Plaintiff *failed* to allege that the "negative performance evaluation was retaliation for her taking FMLA leave." *Id.*, at 19. So in one portion of their brief, the Individual Defendants claim the negative performance review was *only* in retaliation for the FMLA Leave, and in another portion of the same brief, they argue that the negative evaluation was *not* retaliation for the FMLA Leave. The Individual Defendants cannot have it both ways. If the negative performance evaluation was *not* retaliation for the FMLA Leave, then by default, it would have been in retaliation for the Protected Activity. Thus, Plaintiff has alleged that she suffered retaliation in 2013 for the Protected Activity of 2008-2009.

Second, the amended complaint itself alleges that the negative performance review was retaliation for the FMLA Leave *and* retaliation for the Protected Activity. *See* Am. Compl., at ¶ 90 ("[I]n 2008, once Plaintiff reported her complaints of sexual harassment and retaliation, Plaintiff immediately began to receive and was given negative/adverse yearly performance evaluations, *which continued through to 2013.*") (emphasis added). Moreover, aside from the negative performance review, Plaintiff alleges that, in 2013 she was ordered to attend pretextual counseling sessions. *Id.*, at ¶¶ 91 and 93. While the Amended Complaint does not specifically state that these counseling sessions were in retaliation for the Protected Activity, this conclusion reasonably may be inferred from the context of the amended complaint as a whole. *Iqbal*, 556

U.S., at 678 (holding the court should find "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Common sense also dictates that it is at least plausible that the counseling sessions were in retaliation for *both* the Protected Activity *and* the 2013 FMLA Leave, just as the negative evaluation in 2013 may have been in retaliation for the Protected Activity *and* the FMLA Leave. *Id.* (finding that a plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

None of these conclusions should be interpreted to suggest that the Court does not have serious reservations about the underlying merits of these claims. *Twombly*, 550 U.S., at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'")). Rather, the Court merely finds that Plaintiff has "nudged [her] claims across the line from conceivable to plausible," albeit, not by much. *Id.*, at 557. Accordingly, Plaintiff's claims for retaliation under Claims Two and Three are not time barred, because they allege that the Individual Defendants retaliated against her in 2013 for complaining about the sexual harassment she suffered in 2004-2008.

### (iii)   *Retaliation for the FMLA Leave Under the FMLA – Claim Four*

The Individual Defendants move to dismiss the FMLA claim for failure to allege plausibly a claim against the Individual Defendants under the FMLA. "A prima facie case of retaliation [under the FMLA] is established when a plaintiff demonstrates that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir.

2004).  The Individual Defendants to not dispute that Plaintiff has satisfied the first two factors.  *See* First MTD, at 18-22.  Rather, they argue that she has failed to satisfy factors three and four.  *Id.*, at 19.

According to the Individual Defendants, the Court should find that, as a matter of law, neither the counseling sessions nor the negative performance reviews give rise to an inference of retaliatory intent.  *Id.*  In support of these arguments, the Individual Defendants contend that no retaliatory intent may be inferred for the 2013 negative performance review, because Plaintiff received negative performance reviews *before* she took the FMLA Leave. *Id.*, at 19-20.  They make the same argument with respect to the counseling sessions, *i.e.*, because Plaintiff was ordered to attend counseling sessions in 2009, the post-FMLA Leave counseling sessions cannot be viewed as retaliatory.  *Id.*, at 20.

The same inconsistency that was fatal to the Individual Defendant's statute of limitations argument is also present here.  In short, the Individual Defendants argue that the 2013 counseling sessions and performance evaluation were not retaliation for the FMLA Leave.  But this argument appears just after the Individual Defendants acknowledge that the Amended Complaint "asserts that these defendants retaliated against Plaintiff *for taking family leave* by giving her a negative performance review in March 2013." *Id.*, at 10-11 (emphasis added).  Having conceded that Plaintiff alleged retaliation for the FMLA Leave, the Individual Defendants cannot turn around and claim that she failed to make this allegation.  As noted above, Plaintiff has plausibly alleged that the 2013 counseling sessions and performance review were retaliation for the Protected Activity and the FMLA Leave.

McConnell and Reardon further claim that they are not covered by the FMLA, because neither is an "employer" within the definition of the statute.  *Id.*, at 20.  Under the Second Circuit's

"economic reality" test for determining whether a person is an employer, a court must consider whether the person: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365 (S.D.N.Y. 2012) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)); *see Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 67 (2d Cir. 2003) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir.1984)).[14] "No one of the four factors standing alone is dispositive." *Herman*, 172 F.3d, at 139 (citing *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir.1988)). Instead, because the "economic reality" test is "determined based upon *all* the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Id.* (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) (emphasis in original)). Furthermore, the Supreme Court has emphasized a broad definition of "employer." *Falk v. Brennan*, 414 U.S. 190, 195 (1973) (noting the "expansiveness" of the definition of employer); *Zheng*, 355 F.3d, at 67 (citing *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) and *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150 (1947) (observing that the Supreme Court has interpreted the term "employ" broadly).

Plaintiff alleges that McConnell and Reardon had "supervisor control and disciplinary purview over" her. Am. Compl., at ¶ 16. In isolation, this allegation would come close to the type of "conclusory statement" against which *Iqbal* warns. *Iqbal*, 556 U.S., at 678. However, the amended complaint also is replete with factual allegations that, if accepted as true, plausibly allege

---

[14] *Herman*, *Zheng*, and other Second Circuit cases cited herein discuss the "economic reality" test in the context of the Fair Labor Standards Act ("FLSA"). However, as *Zheng* noted, "[t]he definition of 'employ' in the FMLA is the same as the definition of 'employ' in the FLSA." *Id.*, at 75, n.15 (citing 29 U.S.C. § 2611(3)). *Zheng* also cited with approval a Ninth Circuit case that borrowed directly from FLSA case law to adjudicate a FMLA case. *Id.* (citing *Moreau v. Air France*, 343 F.3d 1179, 1183 (9th Cir. 2003)).

that McConnell and Reardon were "employers" under the FMLA. *See e.g.*, Am. Compl., at ¶ 55 (Reardon and McConnell directed Friedberg to create a pretextual paper trail of performance issues regarding Plaintiff's performance); *id.*, at ¶ 60 (McConnell e-mailed Plaintiff *directly* threatening termination if she did not attend counseling sessions); *id.*, at ¶ 64 (Reardon convened DCC policy meetings for the purpose of discussing Plaintiff's sexual harassment and retaliation complaints). Although these allegations concern events that occurred before the FMLA Leave, they are still relevant as to the issue of whether McConnell and Reardon were Plaintiff's employers. Moreover, even if the Court confined its analysis to the post-FMLA allegations, Plaintiff still claims that in May 2013, McConnell and Reardon participated in the efforts to make Plaintiff attend counseling sessions, under threat of termination if she did not. *Id.*, at ¶ 91. Plaintiff also alleges that, at least to some degree, McConnell and Reardon had control over the content of her performance evaluation. *Id.*, at 87. This obviously suggests they had the "power . . . to fire" Plaintiff under the first factor of the "economic reality" test. Given the Supreme Court's expansive interpretation of the definition of employer, the Court cannot find that, as a matter of law, Plaintiff has insufficiently pleaded that McConnell and Reardon were her employers under the FMLA.

The evidence put forth by Reardon and McConnell concerning the scope of their employment activities does not alter this conclusion. McConnell asserts that in 2009 he became Counsel to the UCS, and that, in this new position, he had no involvement "with DDC personnel matters." First MTD, at 21. Similarly, Reardon states that he was only a UCS volunteer, not an employee, and thus had "no involvement in personnel matters" either. *Id.*, at 22.

First, contrary to the assertions of McConnell and Reardon, it is not at all clear that the Court may consider these submissions without converting the First MTD into a motion for summary judgment. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

*Chambers* noted that a "plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." *Id.* (emphasis in original). There is no indication that, in drafting the amended complaint, Plaintiff relied on anything submitted by McConnell and Reardon in this regard.

Second, even if the Court were to consider the facts adduced by McConnell and Reardon, the outcome would be the same. The assertion that neither McConnell nor Reardon were "involved in personnel" matters is insufficient, at this stage, to defeat Plaintiff's contentions that they (i) supervised her, (ii) threatened to fire her if she did not attend counseling sessions, and (iii) directed others to create negative performance reviews for her.

Again, while Court maintains significant doubts regarding Plaintiff's ability to actually prove this claim, the only issue currently before the Court is whether the claim is plausible. *Twombly*, 550 U.S., at 556-57. By a narrow margin, the Court finds that it is, and for this reason the motion to dismiss Claim Four is denied.

### (iv)    *Retaliation for the FMLA Leave Under the NYCHRL – Claim Five*

Plaintiff's fifth cause of action asserts that the Individual Defendants violated the NYCHRL "by altering the terms, conditions and privileges of Plaintiff's employment as a result of Plaintiff's taking a leave of absence to attend to the disabling and serious medical condition of her daughter." Am. Compl., at ¶ 113. In other words, Plaintiff claims that the Individual Defendants violated the NYCHRL by retaliating against her for taking the FMLA Leave. This argument is erroneous, because the FMLA Leave is not a protected activity under the NYCHRL, although it is a protected activity under the FMLA.

"To establish a *prima facie* case of retaliation under the NYCHRL, a plaintiff must show that: (1) he participated in a protected activity; (2) the defendant knew about his participation; (3)

the defendant took an employment action that disadvantaged the plaintiff *in any manner;* and (4) a causal connection existed between the protected activity and the negative employment action." *Sletten v. LiquidHub, Inc.*, 2014 WL 3388866, at \*1 (S.D.N.Y. July 11, 2014) (citing *Mayers v. Emigrant Bancorp, Inc.,* 796 F. Supp.2d 434, 446 (S.D.N.Y. 2011) (emphasis in original)). To satisfy the first element, a plaintiff must show that she engaged in "an activity taken in good faith to protest or oppose statutorily prohibited discrimination." *Sletten*, 2014 WL 3388866, at \*1 (quoting *Morgan v. N.Y. State Att'y Gen.'s Office*, 2013 WL 491525, at \*9 (S.D.N.Y. Feb. 8, 2013)); *Fattoruso*, 525 F. App'x, at 27 (2d Cir. 2013) (quoting *Kessler v. Westchester Cty. Dep't of Soc. Servs.,* 461 F.3d 199, 210 (2d Cir.2006) ("[A] plaintiff who makes a complaint to his employer 'need only have had a good faith, reasonable belief that he was opposing an [unlawful] employment practice.'")).

The fifth cause of action states that Plaintiff took a leave of absence to care for her sick daughter. Am. Compl., at ¶ 113. This FMLA-protected leave is the only "activity" alleged with respect to this claim. As taking FMLA leave does not constitute "opposition" to an unlawful employment practice, Claim Five fails to allege that she engaged in a protected activity under the NYCHRL. To be sure, Claim *Three* alleges that she engaged in a protected activity under the NYCHRL by complaining about the sexual harassment. Am. Compl., at ¶ 109. But because she has failed to allege a protected activity under Claim Five, it must be dismissed for failure to state a claim.

### (v)     *Negligent Supervision – Claim Six*

The Individual Defendants move to dismiss the negligent supervision claim on the ground that it is precluded by the New York Workers' Compensation Law. First MTD, at 13-15. The law provides that, "[t]he right to compensation or benefits under this chapter, shall be the exclusive

remedy to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ." N.Y. Workers' Comp. Law § 29(6) (McKinney 2011). It is well settled within the Second Circuit that "common law negligence claims are barred by the New York[] Workers' Compensation Law." *D'Annunzio v. Ayken, Inc.*, 25 F. Supp. 3d 281, 294 (E.D.N.Y. 2014) (collecting cases); *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001) (citations omitted) (barring negligent supervision and retention claims arising out of sexual assault by a co-worker); *Torres v. Pisano,* 116 F.3d 625, 640 (2d Cir.1997) (barring negligent supervision claim based on harassment by co-worker). Accordingly, because Plaintiff's negligent supervision claim clearly is preempted by the New York Workers' Compensation Law, it is hereby dismissed with respect to all Individual Defendants.

> *(vi)*    *Intentional Infliction of Emotional Distress – Claim Seven*

In New York, "the standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993)). In order to sustain a claim, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999) (quoting *Howell*, 81 N.Y.2d, at 121). Plaintiff contends that the Individual Defendants are liable under this standard because they retaliated against Plaintiff, caused her constructive discharge, damaged her reputation, and caused her "extreme professional embarrassment." Am. Compl., at ¶ 120. As a matter of law, these allegations are woefully inadequate to maintain a claim for intentional infliction of emotional distress. *Compare Conboy*, 241 F.3d at 258 (harassing telephone calls from debt collectors insufficiently "outrageous" to satisfy New York's IIED standard), *and Chimarev*

*v. TD Waterhouse Inv'r Servs., Inc.*, 280 F. Supp. 2d 208, 215 (S.D.N.Y. 2003) *aff'd*, 99 F. App'x 259 (2d Cir. 2004) (no IIED where employer "prevented [employee] from attending meetings and social events, denied him his chosen workplace for the benefit of a younger co-worker, destroyed and scattered his books and documentation, deprived him of his work tools, and subjected him to insults and slurs based on his nationality"), *with Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 148-150 (2d Cir. 2014) (upholding IIED liability where defendants tormented an African-American employee for three years with degrading and abusive racial harassment, including: referring to the employee as "boy," "fucking nigger," "dancing gorilla," "King Kong, "fucking black bitch," and "fucking black piece of shit"; threatening to kill the employee over the company loudspeaker; spray painting "KKK" on the employee's work station; covering the employee's belongings and workstation with thick motor grease on a daily basis; repeatedly vandalizing the employee's car; and hanging a stuffed toy monkey by a noose from the side-view mirror of the employee's car). Accordingly, Claim Seven is dismissed as to all Individual Defendants.

## CONCLUSION

For the foregoing reasons, the Individual Defendants' motions to dismiss are granted as follows: (i) all claims against Raniere and Friedberg are dismissed, with prejudice; (ii) Claims Five, Six, and Seven are dismissed as to each Individual Defendant, with prejudice; and (iii) those portions of Claims Two and Three alleging sexual harassment and aiding and abetting sexual harassment are dismissed as to each Individual Defendant, with prejudice. As to the six remaining Individual Defendants, the only claims that survive are: (i) Claim Four; and (ii) those portions of Claims Two and Three alleging retaliation.

SO ORDERED.

Dated: Brooklyn, New York
      February 17, 2016

                                        /s/
                                 DORA L. IRIZARRY
                                 United States District Judge